WILLIAM R. MUMFORD

*v.*

DANIEL H. TOLMAN.

258:35 LRA4

*Filed at Ottawa June 15, 1895—Rehearing denied October 21, 1895.*

1. VARIANCE—*omission of words "after date," in note payable on demand.* The words "after date," in a note payable "on demand, after date," do not constitute a substantial variance from a declaration which omits those words but contains the words "on demand."

2. BILLS AND NOTES—*deposit of collateral does not destroy negotiability.* A note is not made non-negotiable by a statement attached that the maker has deposited with the holder, as collateral security, a certificate of stock accompanied with a power of attorney to confess judgment.

3. EVIDENCE—*burden on defendant to show attorneys' fees were meant as usury.* Defendant in a suit upon a note containing a provision for attorneys' fees, not on its face usurious, has the burden of showing that such provision was intended as a cover for usury.

4. SAME—*parol agreement made when note was given cannot be shown.* A contemporaneous parol agreement that a note is to be paid only out of dividends realized from certain stock cannot be shown to vary the terms of the note, even on the ground that the two together make a contract partly in writing and partly by parol.

5. JUDGMENTS—*by confession—question raised by motion to vacate.* The question, on motion to vacate a judgment entered by confession, is not whether it shall be set aside for errors of law, but whether there are equitable reasons why it should be opened up to let in a defense.

6. FRAUD—*mere expression of opinion as to facts not fraud.* An expression of opinion as to the value of stock and the profits it will yield does not constitute fraud which will invalidate a note given for the purchase price.

*Mumford v. Tolman,* 54 Ill. App. 471, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

The facts in this case, as stated by the Appellate Court, are as follows: On January 29, 1894, there was entered in the circuit court of Cook county a judgment by

confession for $8612.96 and costs, in favor of appellee, against appellant. The *cognovit* and judgment included $395 attorney's fees. The note upon which judgment was entered was given for one hundred shares of the Chicago Trust and Savings Bank stock, in this language:

"CHICAGO, *Oct. 1, 1892.*

"On demand, after date, for value received, I promise to pay to the order of myself eighty-five hundred dollars, with interest at the rate of seven per cent per annum."

Attached to the note was the statement that the maker of the note had deposited with the legal holder thereof, as collateral security, a certificate for one hundred shares of the Chicago Trust and Savings Bank stock, etc., and also a power of attorney to confess judgment. The note was endorsed, "W. R. Mumford." On the same date the judgment was entered the defendant moved to set it aside and for leave to plead. The court granted leave to the defendant to file affidavits in support of his motion. Thereupon he presented his own affidavit, setting forth that on November 1, 1886, and prior thereto, Daniel H. Tolman was and had been the president, manager and owner of the majority of the stock of the Chicago Trust and Savings Bank, and conducted its business in his own way; that November 1, 1886, he induced affiant to purchase one hundred shares of the capital stock of the bank at the price of $13,000, and persuaded him to give his note for that amount, with the stock purchased as collateral security; that at this time he, Mumford, was a stockholder of the bank and also a director; that this note was reduced between the time it was given and June 21, 1889, to $10,000, and on that date was renewed for that amount; that between said date and October 1, 1892, it had been reduced to $8000, and was renewed for that amount, and $600 had since been paid, thus showing that since November 1, 1886, the date of the original note, he, Mumford, had paid Tolman $5100 and all accrued interest

on said note.    It was further alleged in his affidavit that
at the time he, Mumford, made the purchase of the stock
and gave the original note, Tolman represented to him
that the bank was increasing its business and profits very
rapidly, and that by reason of the earning capacity of the
stock it was then worth $130 per share and in a short time
would be worth $200 per share; that he told Tolman that
he did not have any more money to invest, no matter how
valuable the stock might be; that thereupon Tolman, to
induce him to take the stock, guaranteed he should not
lose anything on account of the purchase,—that he, Tol-
man, would carry the note along until it should be paid
by dividends out of the stock, and that he, Mumford,
should never be called upon to pay the indebtedness ex-
cept out of the dividends; that it was by reason of this
assertion and the guaranty of Tolman that he was induced
to purchase the stock.    He further stated in his affidavit
that Tolman, by his fraudulent actings and doings in the
management of the Chicago Trust and Savings Bank to
his own personal interest, and by means of the conversion
to his own use of the funds, property and money of the
bank, has rendered the stock practically worthless; that
in September, 1893, he decided to have the bank wind up
its affairs, and ever since that time it has been so engaged,
and in November, 1893, he told the stockholders he did not
think they would get much for their stock; that this state
of affairs was brought about by the mismanagement, mis-
appropriation and conversion of the funds of the bank by
Tolman, and upon a just and true accounting between
himself and the bank it would be found that he is indebted
to it for moneys and property misappropriated, and lia-
bilities incurred on account of his fraud and mismanage-
ment, upwards of the sum of $500,000, for which a bill in
chancery is now pending; that the status of the chancery
suit has been established by order of court, entered by
agreement of all parties, and Tolman has given bond to
pay the bank, and Mumford as intervening petitioner, any

sum that may be found due them on a final decree; that an accounting, not only between the bank and Tolman, but between Mumford, as intervening petitioner, and Tolman and said bank, is involved in that proceeding, and that the alleged controversy here is but part and parcel of that accounting. All the allegations of this affidavit were denied in a counter affidavit filed by Tolman. It also appears from the record, that on October 27, 1888, the directors of the Chicago Trust and Savings Bank applied $26,000 of the earnings of the bank towards the unpaid subscriptions of stockholders for the increased stock, made in 1886, of which the stock sold to Mumford was a part; that on September 27, 1889, they appropriated $24,000 more of such earnings for the same purpose, and July 19, 1890, $50,000, and on November 3, 1891, $100,000, making in all $200,000. Both Mumford and Tolman were directors, and assisted in passing these resolutions, and Mumford received the benefit of each of these dividends as credits on his note to Tolman.

The motion to vacate the judgment being overruled, Mumford appealed to the Appellate Court for the First District, and there insisted that the circuit court erred in denying his motion, because, first, "there is a fatal variance between the note declared on and the document offered in evidence, which contains the power to confess judgment, and therefore the judgment is void;" second, "that the document offered in evidence as the basis of this proceeding is not a negotiable instrument, and therefore a nullity;" third, "that the document offered in evidence as the basis of this proceeding is usurious on its face;" fourth, "that courts of law exercise an equitable jurisdiction over judgments entered by confession for the purpose of doing justice, and will vacate the same upon motion, or open the case and give the defendant leave to plead;" fifth, "that the affidavit of Mumford, if true, together with the admitted facts, shows an absolutely good defense."

The Appellate Court affirmed the order of the circuit court. (54 Ill. App. 471.) The same grounds of reversal are urged here.

WEIGLEY, BULKLEY & GRAY, for appellant:

The document offered in evidence to support the declaration is payable "on demand, after date," instead of "on demand." This variance is material and one of substance. In support of this proposition we cite *Spangler* v. *Pugh,* 21 Ill. 85; *Davidson* v. *Johnson,* 31 id. 523; *Taylor* v. *Riddle,* 35 id. 567; *Insurance Co.* v. *Lieberman,* 58 id. 117; *Sheehy* v. *Mandeville,* 7 Cranch, 208; *Chase* v. *Dana,* 44 Ill. 262; *Carpenter* v. *Bank,* 19 Ill. App. 549.

There was no power of attorney authorizing confession of judgment upon the note declared on. The judgment was therefore void. *Sheehy* v. *Mandeville,* 7 Cranch, 208; *Chase* v. *Dana,* 44 Ill. 262; *Carpenter* v. *Bank,* 19 Ill. App. 549; *Roundy* v. *Hunt,* 24 Ill. 598.

Though an instrument possess all the other requisites of a bill or note, its character as a commercial instrument is destroyed, and it becomes a covenant governed by the rules affecting common law securities, if it be sealed. 1 Daniel on Neg. Inst. (3d ed.) sec. 28; Edwards on Bills, 208, 210; Chitty on Bills, (13th Am. ed.) 190; Story on Bills, sec. 62; Story on Notes, sec. 65; *Conine* v. *Railroad Co.* 3 Houst. 289; *Clegg* v. *LeMesurier,* 13 Gratt. 108; *Mann* v. *Sutton,* 4 Rand. 253; *Hopkins* v. *Railroad Co.* 3 W. & S. 410; *Clark* v. *Farmers' Manf. Co.* 15 Wend. 256; *Parks* v. *Dukes,* 2 McCord, 380; *Lewis* v. *Wilson,* 5 Blackf. 369; *Helper* v. *Alden,* 3 Minn. 332; *Warren* v. *Lynch,* 5 Johns. 239.

Obligations containing mutual covenants are not assignable, nor is a contract containing several covenants, some of which are assignable and some not. *Beezley* v. *Jones,* 1 Scam. 34; *Potter* v. *Gronbeck,* 117 Ill. 404.

The bank stock, and the contract authorizing its sale and the application of the proceeds, can hardly be called collateral, in the sense of being an addition to the prin-

cipal security.   It is, in fact, by its terms, the principal contract or fact upon which the promise is based, and destroys the negotiability of the note.   *Overton* v. *Tyler*, 3 Pa. St. 346; *Sweeny* v. *Thickstun*, 77 id. 131; *Johnson* v. *Speer*, 92 id. 227; *Bank* v. *Bynum*, 84 N. C. 24; *Jones* v. *Radatz*, 27 Minn. 240; *Bank* v. *Larsen*, 60 Wis. 206; *Manufacturing Co.* v. *Newman*, 60 Md. 584.

Contracts made at the same time as a promissory note, and memoranda made contemporaneously with promissory notes, are held to be part and parcel of the transaction, and in many instances control the notes.   *Shaw* v. *M. E. Society*, 8 Metc. 223; *Costello* v. *Crowell*, 127 Mass. 293; *Bailey* v. *Cromwell*, 3 Scam. 71; *Duncan* v. *Charles*, 4 id. 561; *Davis* v. *McVickers*, 11 Ill. 327; *Lowe* v. *Bliss*, 24 id. 168; *Bradley* v. *Marshall*, 54 id. 173; *Smith* v. *Riddell*, 87 id. 165; *Potter* v. *Gronbeck*, 117 id. 404.

To make a note negotiable it must be for the absolute payment of a fixed sum of money, based upon no contingency, at a time certain.   *Sloan* v. *McCarthy*, 134 Mass. 245; *Miller* v. *Stone Co.* 1 Ill. App. 273; *Wickersham* v. *Beers*, 20 id. 243; *Walters* v. *Short*, 5 Gilm. 252; *Smally* v. *Eddy*, 15 Ill. 324; *Kelly* v. *Hemingway*, 13 id. 604; *Musselman* v. *Oakes*, 19 id. 81; *Gillilan* v. *Myers*, 31 id. 525; *Kingsbury* v. *Wall*, 68 id. 311; *Baird* v. *Underwood*, 74 id. 176.

The extra five per cent attorneys' fees is either part of the obligation or it is a penalty.   It is not, and can not be, a penalty, because not based upon any condition. It must be, and is therefore, a part of the obligation. Being part of the obligation it renders the same usurious.   *Dow* v. *Updike*, 11 Neb. 96; *State* v. *Taylor*, 10 Ohio, 378; *Shelton* v. *Gill*, 11 id. 417; *Bullock* v. *Taylor*, 39 Mich. 138; *Myer* v. *Hart*, 40 Mich. 517.

MOSES, PAM & KENNEDY, for appellee:

A promissory note, as against the maker, payable on demand, can be prosecuted to judgment without averring or proving a demand.   *Hunt* v. *Divine*, 37 Ill. 137; *Butter-*

*field* v. *Kinzie,* 1 Scam. 445; *Armstrong* v. *Caldwell,* id. 546; *Wallace* v. *McConnell,* 13 Pet. 136; *Wood* v. *Savings, etc.* 41 Ill. 267.

The maker of a promissory note absolute on its face cannot show as a defense thereto, even against the payee, an oral contemporaneous agreement which makes the note payable only on a contingency. *Walker* v. *Crawford,* 56 Ill. 444; *Johnson* v. *Glover,* 121 id. 286; *Mosher* v. *Rogers,* 117 id. 449; *Courtney* v. *Hogan,* 93 id. 101; *Worden* v. *Salter,* 90 id. 160; *Wilson* v. *Roots,* 119 id. 384; *Black* v. *Railway Co.* 111 id. 361; *Gardt* v. *Brown,* 113 id. 479; *Heisen* v. *Heisen,* 145 id. 669; *Schultz* v. *Bank,* 141 id. 116.

As to expressions of opinion as to the value of stock and the profits in the future, such statements cannot be used either as a basis for an action or for defense. *Gage* v. *Lewis,* 68 Ill. 615; *Welling* v. *Schiller,* 27 Ill. App. 284, and authorities cited; *Dillman* v. *Nadlehoffer,* 119 Ill. 567; *Booth* v. *Smith,* 117 id. 374.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The alleged variance is, that the declaration, in setting out the note, uses the language, "on demand I promise to pay," etc., whereas the note reads, "Chicago, October 1, 1892.—On demand, *after date,*" the declaration omitting the words "after date." This did not constitute a substantial variance. It was sufficient for the declaration to describe the note according to its legal effect, and this it did. The note was not due until after October 1. After that date it was due, not because the words "after date" were added, but because it stated it was due on demand. To set aside the judgment in this case because of the variance insisted upon, would not only be to ignore all rules of equity, but trifling with justice. What possible injury has appellant suffered by the so-called variance?

That the instrument sued on is negotiable is too clear to be made the subject of serious controversy. The Appellate Court properly disposed of this point. We know

of no sufficient reason for saying the instrument was a nullity, even if it had not been negotiable.

We also concur in the views of the Appellate Court on the point of usury. The note is not usurious on its face. If the provision for attorney's fees was intended as a cover for usury that fact should have been shown.

In the argument of counsel for appellant on the first three objections to the judgment they seem to lose sight of the fourth, viz., that courts passing on such motions exercise an equitable jurisdiction, and argue the case as though this was an appeal from the judgment itself. The question, on motion to vacate a judgment entered by confession, is not whether the judgment shall be set aside for errors of law, but whether there are equitable reasons why it should be opened up to let in a defense. *Knox* v. *Winsted Savings Bank*, 57 Ill. 330; *Hansen* v. *Schlesinger*, 125 id. 230.

The final contention, that the affidavit of appellant, together with the admitted facts, show an absolutely good defense to the note on which the judgment was confessed, cannot, in our opinion, be maintained. The affidavit attempts to set up two defenses: First, the note was obtained by fraud; and second, by the terms of a contemporaneous parol agreement it was to be paid only out of dividends realized on the stock for which it was given. As to the alleged parol contract, it is clear that under well-understood rules of law it cannot be used to vary, alter or change the terms of the note. The position that the parol agreement and the note together make a contract partly in writing and partly by parol, is clearly untenable. Moreover, the affidavit does not show that the alleged agreement was continued in force by the parties upon the renewals of the note. For anything appearing in the affidavit that agreement had ceased to be available as a defense to the note, by limitation, long before the judgment by confession was entered. And again, admitting all that is stated in the affidavit to be true, it fails

to establish a valid contract, for a consideration, that the note should not be paid. The same is true as to the charges of fraud. All that Tolman said, according to the affidavit, amounted to no more than the expression of an opinion as to the value of the stock and the profits it would yield. The affidavit does not say the stock was not, in fact, worth $130 per share when purchased, nor that, being a director of the bank, affiant did not know its real value as well as did Tolman. The facts show that it was at the time of the purchase, and long afterwards, valuable stock, paying, by its dividends, a large part of the consideration agreed to be paid for it. The conduct of appellant in renewing the note from time to time, without limitation or qualification as to his liability to pay it, is wholly inconsistent with either defense attempted to be set up in his affidavit. Therefore, without reference to the counter affidavit of Tolman directly and positively contradicting each of the facts alleged in the affidavit of appellant, no substantial ground for setting aside the judgment was shown, and there was no error in the refusal of the motion.

Since the submission of the case, counsel for appellant have called our attention to *Lincoln Nat. Bank* v. *Perry*, decided by the United States Circuit Court of Appeals for the Eighth District, as an authority sustaining their contention here. We have examined the case, and are unable to see that it has any bearing whatever upon the questions herein involved.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*