## WARNER et al. v. COLEMAN et al.

No. 12115—Opinion Filed Jan. 15, 1924.

Rehearing Denied June 10, 1924.

Leave to File Second Rehearing Denied Jan. 6, 1925.

(Syllabus.)

### 1. Ejectment—Nature of Action—Issues.

At common law, ejectment is a possessory action. The plaintiff must allege and prove the legal or equitable title and the right to the possession of the premises. Under the statutes of Oklahoma, there is no action designated as "ejectment," but the statutory action for the recovery of specific real property embraces the same elements as the common-law action in ejectment, and to maintain such action, under the statute, the elements of the common-law action in ejectment must be alleged and proven.

### 2. Same — Equitable Relief—Cancellation of Deed.

A petition which alleges a state of facts which do not show that the plaintiff is the owner of the legal or equitable title and entitled to the immediate possession of the premises does not plead a statutory action for the recovery of specific real property; but where the petition alleges a state of facts on account of which equitable relief is prayed to the end that the legal title to the premises in question may be adjudged and decreed reinvested in the plaintiff, it pleads a cause of action for the determination of an adverse interest in real estate; and where it seeks to rescind a deed on the ground of fraud, the equitable remedy of rescission being invoked and the determination of the right claimed in the premises being predicated upon a cause of action in rescission, the action is one of equitable cognizance, and not a statutory action for the recovery of specific real property, although the possession or the right to the possession may follow as an incident to the granting of the equitable remedy.

### 3. Jury—Right to Jury Trial—Land Suits —Equitable Relief.

It is not every action involving the title to real property where trial by jury is a matter of right; but section 4993, Rev. Laws 1910, gives the right of trial by jury, as to issues of fact arising in actions for the recovery of specific real property, and where the gravamen of the action is other than one for relief as in ejectment at common law, or is for an equitable remedy such as rescission, the right to a jury is not given by statute.

### 4. Limitation of Actions—Land Suits— Equitable Remedy.

Subdivision 3 of section 4657, Rev. Laws 1910, is applicable to actions for the recovery of real property as therein limited and as herein defined, but has no application to an action pursuing an equitable remedy for reinvestment of legal title, and without the successful granting of which the complainant has neither legal nor equitable title, nor the right to possession.

### 5. Same—Relief from Fraud.

Subdivision 3 of section 4657, Rev. Laws 1910, which in effect provides that civil actions other than for the recovery of real property can only be maintained when brought within two years after discovery of fraud, is the applicable limitation statute where equitable remedy such as rescission is pursued to reinvest title in complainant conveyed by deed, where the right to rescind is based on allegations of fraud in the procurement of the deed.

### 6. Affirmance of Judgment.

Record examined, and held, the judgment of the trial court in favor of defendants should be affirmed.

Error from District Court, Ottawa County; E. F. Lester. Assigned Judge.

Action by Minnie Newman Warner and another against G. L. Coleman and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Paul A. Ewert, Dyke Ballinger, and A. C. Towne, for plaintiffs in error.

A. Scott Thompson, for defendants in error.

BRANSON, J. This action was begun in the district court of Ottawa county in the year 1916. Minnie Newman Warner and C. T. Warner, plaintiffs in error herein, were the plaintiffs in the district court, and the defendants in error, G. L. Coleman, A. E. Coleman, J. F. Robinson, C. M. Harvey, individually and as copartners, and Commerce Mining & Royalty Company, trustees for said G. L. Coleman, A. E. Coleman, J. F. Robinson, and C. M. Harvey, and Lennan Lead & Zinc Company, a corporation, were the defendants in the district court. The parties will be referred to as they appeared in the court below.

The plaintiffs filed their petition, to which a demurrer was sustained, an amended petition, to which a demurrer was sustained, and a second amended petition, to which a demurrer was sustained, but a new trial was granted and the second amended petition was further amended, to which second amended petition, as amended, the demurrer was overruled. The cause came on for trial, and the trial court sustained a demurrer to the evidence of the plaintiffs, dismissing their petition, and from this order and the order overruling their motion for a new trial, the plaintiffs appeal. The second amended petition, as amended, is so voluminous it is wholly impracticable to give more than a synopsis of the allegations thereof.

The petition alleges in effect that the plaintiff, Minnie Newman Warner, a citizen of the Quapaw Indian Tribe, was allotted and patented, several years prior to the facts out of which this controversy arose, approximately 199 acres of land, by reason of her citizenship in said tribe. It lay in a rectangular shape, in the northwest part of section 6. In 1907, a mining lease on the said allotment of the said plaintiff was purchased by and for the individual defendants, and thereafter until April, 1911, they caused some prospecting to be done upon a certain portion of said allotment for lead and zinc ore. In 1910, the plaintiff, joined by her husband and coplaintiff, C. T. Warner, sold to one Frank Warner 15 acres of the said allotment, which was at the time subject to the mining lease, supra. In 1911, said plaintiffs allege that the lessees began negotiating with plaintiffs to purchase the fee title to 59 acres of the said allotment, representing to the plaintiffs that they had not discovered any lead or zinc ore on said land, and that said land was not of any mineral value, and concealing from the plaintiffs that said land was rich in mineral value, in order that they might fraudulently induce the plaintiffs to sell the land to them at its farm value; that the plaintiffs were uneducated and wholly without any knowledge of prospecting, drilling, or developing of said land, and the discovery of lead and zinc ore thereon, and had no experience and no opportunity to know what mineral wealth had been discovered by the holes drilled on said land, and that they relied upon the said statements of the defendants, which were fraudulent; that the plaintiffs saw an immense mill being erected on the land so sold, very soon after it was purchased by the defendants, which mill was for the purpose of concentrating lead and zinc ore, but they still had confidence in the representations of defendant Robinson, with whom they negotiated the sale; but later, upon investigation, had found that by said falsehood, fraud, and deceit of the said defendant Robinson they had been swindled out of an immense fortune and that his pretended friendship for them was merely to gain their confidence to get them under his control, and thus swindle them out of this valuable tract of mineral land. That on investigation they found that the drilled holes disclosed what subsequent development proved, that the land was very rich in lead and zinc ore deposits, and this fact they discovered in the early part of 1915. That the drill logs, which were not shown to plaintiffs, disclosed that the holes drilled on the land by the said defendants showed that the mineral deposits in said land were immensely valuable; that said fraudulent representations of the defendant Robinson, and his failure to disclose what the logs showed, operated to induce the plaintiffs to convey 59 acres of said land to the defendant Robinson and his copartners for the sum of $8,500, and that within two years after the plaintiffs discovered this fraud had been perpetrated upon them, they commenced this action.

The petition further alleged, in substance, that soon after the sale of the said 59 acres, the said defendants leased said land to defendant Lennan Lead & Zinc Company for a bonus consideration of $10,000 and 25 per cent. royalty; that plaintiffs ratified and confirmed the lease to the Lennan Lead & Zinc Company, made by defendants, not having any desire to disturb its possession and use of the same

for mining purposes, but seek a rescission of the deed made in 1911 to the said individual defendants on the ground of fraud; the prayer of the petition being, not only for rescission of the conveyance, but entire possession of the property against each and all of the defendants.

The plaintiffs' petition, after setting out the alleged representations which plaintiffs say were fraudulent, and the alleged fraudulent concealment by the defendant Robinson of the discovery of the mineral deposits, which they actually discovered upon certain portions of the land, prays judgment in the sum of $200,000 against the defendants G. L. Coleman, A. E. Coleman, J. F. Robinson, and C. M. Harvey and the Commerce Mining & Royalty Company, which prayer recites, in substance, that the said defendants have received and collected said amount in the form of royalties from mining operations thereon; and prayed, further, damages at the rate of $5,000 per week for ore being taken from the ground, and—

"That this court by its order find, decree and declare that the said warranty deed—made, executed and delivered by the plaintiffs to the individual defendants was procured by fraud and misrepresentation and declare the said deed null and void and of no effect and order it canceled of record, and the said land reconveyed to the plaintiffs, and for the possession of said land, and for rents and profits subject to the mining lease made, executed and delivered by the said defendants to Temple Chapman and T. L. Lennan, and by them assigned to the Chapman, Lennan Lead & Zinc Company, now the Lennan Lead & Zinc Company, and that the plaintiffs be subrogated to the rights of the defendants, the lessors in the said lease, and for the cost and disbursements of this suit, together with such other and further and additional relief, as in the good conscience of this court, he shall deem expedient, fit and just."

There is found in the petition of the plaintiffs no allegation of fact, in substance or effect, or by way of conclusion of law, that plaintiffs are entitled to the immediate exclusive possession of the land. The petition refers to two exhibits, one of which is a lease contract executed by the plaintiffs with the defendant Robinson, under which he and his copartners were given the right to the possession of the property in question for the purpose of prospecting thereon for mineral deposits, and it was under this lease contract that the shafts were sunk, between 1907 and the date of the deed, May 13, 1911.

After the demurrer ·of the defendants

was overruled to the second amended petition, as amended, the defendants answered setting up the extent of the surface improvements made on said land in 1911 and 1912; that the plaintiffs lived just across a 40-acre tract of land from the location of the mill erected on the land sold; that this action was barred by the statute of limitation and laches of the plaintiffs; denied that any fraud was perpetrated; denied that anything as to the possible ore value of said land was concealed from the plaintiffs; alleged that the plaintiffs had full knowledge of all the ore value attached to the land that was in the knowledge of the defendants, and that the plaintiffs are estopped from setting up the fraud alleged. As a further consideration, in addition to the $8,500 paid, the defendants released in favor of the plaintiffs their mining lease on the remainder of the 199 acres of the allotment, which the plaintiffs afterwards sold to other persons, thereby placing it beyond their power to put them in status quo.

The plaintiffs demanded a trial to a jury, and one of the grounds of alleged error assigned is that the court denied them the right of trial by jury; and, second, they contend that the court committed reversible error in sustaining the demurrer of the defendants to the evidence offered by the plaintiffs.

This brings us to a discussion of the question as to whether or not, under the allegations of the petition, plaintiffs had a right to a jury trial, and whether or not, if such right existed, the denial thereof was reversible error, the court having found as a matter of law that the evidence was insufficient to establish a cause of action. The plaintiffs dealt with the defendant Robinson, and him alone.

Did the court err in denying a jury trial? In this connection, plaintiffs contend that this was an action for the recovery of real estate and that the plaintiffs were entitled as a matter of right and by reasons of the statutes to a trial by jury; while the defendants contend that this is not an action for the recovery of real estate, within the meaning of the statutes providing for a jury trial in an action for the recovery of specific real property. That section of the statutes on which the plaintiffs base this contention is section 4993, Rev. Laws 1910.

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived,

or a reference be ordered, as hereinafter provided."

It will be noted that, among other provisions, issues of facts arising in an action for the recovery of specific real property shall be tried by a jury. If the allegations of plaintiffs' petition constitute such a cause of action as is referred to in said section of the statute as one "for the recovery * * * of specific real * * * property," then and in that event, the plaintiffs had a right to a trial by jury of the facts constituting the cause of action alleged. An action for the "recovery of real property," within the meaning of the statutes governing and controlling actions therefor, embraces the same elements as the common-law action of ejectment, and is another name for such an action. In order to entitle the plaintiffs to recover in the common-law action of ejectment, they must allege and show legal or equitable title in themselves and the right of possession as against the defendants. Jennings v. Brown, 20 Okla. 294, 94 Pac. 557. This character of action, to wit, for the "recovery of specific real property," as referred to in the statutes, is an ejectment action as designated at common law, and does not lie except in cases where the plaintiff alleges a state of facts showing the legal or equitable title, and the right to possession, on which the judgment being based, the executive officer could deliver possession on execution. In other words, if the allegations of the plaintiffs, on which they demand the relief prayed in their petition, do not show them entitled to the possession as against the defendants (there is nothing alleged to show them tenants in common with either defendant), but only such possession as would follow as an incident to the equitable relief sought, as well as having the legal or equitable title, the petition does not state a cause of action for the "recovery of specific real property" within the meaning of the above quoted section of the statute, although the allegations may be sufficient to draw in question the determination of an alleged adverse right or interest in the real estate. The statute does not give, as a matter of right, a jury trial in every action in which a determination of an adverse right or interest in real property may be involved. The statutes, taken together, seem clearly to give this right only when the action, as pleaded by the plaintiff, is for the recovery of the real estate in the sense in which ejectment is maintainable at common law. See note 1, 9 R. C. L. p. 880, and cases there cited.

In the instant case the petition filed by the plaintiffs does not affirmatively show that the plaintiffs were the owners of the legal or equitable title to the land and entitled to the immediate possession thereof, as prayed against the defendants, but they seek to invoke an equitable remedy to vacate a legal conveyance and reinvest them with title. The plaintiffs plead a lead and zinc mining lease contract executed in 1907, which gave to certain of the defendants the right to the possession of the property for mining purposes, reserving to plaintiffs, as the contract did by its express terms, only "the right to go upon and visit said land and mines at such times as may be desired, to examine and ascertain the amount of production mined or produced thereon," etc. The gravamen of the cause of action was the rescission of the deed through the equitable remedy.

The petition fails to disclose any allegations which in any wise negative the right of the individual defendants to whom the property was afterwards conveyed by deed in 1911 to have and hold the lease contract. The rules of rescission are invoked, and to grant the prayer of plaintiffs' petition the lease which was surrendered must be restored to them. So far as the allegations of the petition of the plaintiffs go, the said lease contract remained in full force and effect, even after the execution and delivery of the deed sought to be rescinded for fraud, except as a matter of law the estate and interest evidenced by the lease contract might have merged into the greater estate conveyed by the deed, though the evidence disclosed the lease on the entire allotment had been released as a part consideration for the deed. But there is no allegation in the petition which would affect the lease contract by reason of fraud or otherwise; and if plaintiffs are entitled to rescind the deed to the property, which could be decreed on the allegations of the petition only by an adjudication that it was procured by fraud, such adjudication could only be had by the plaintiffs complying with the provisions of section 986, Rev. Laws 1910, which provisions are as follows:

"Rescission, when not affected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"First. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

"Second. He must restore to the other

party everything of value which he received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

There is no allegation in the petition, nor in the reply to the defendants' answer, that if the lease contract was merged or was in fact surrendered as a part consideration for the execution of the deed, the plaintiffs tendered to the defendants the lease rights contained in said lease contract.

Compliance with these rules was neither pleaded nor attempted to be proven. That they had rescinded promptly upon discovery of the alleged fraud and tendered back all the defendants parted with was not alleged, and such failure of allegation was not even supplied by the proof. Duncan et. al. v. Keecho Oil & Gas Co., 75 Okla. 98, 181 Pac. 709.

In Black on Rescission, vol. 2, page 1496, the rule is stated:

"It has been already shown that a person desiring the rescission or cancellation of a contract or conveyance to which he is a party is required to act with reasonable promptness after discovering the facts which give him a right to rescind, and that his unreasonable delay in this matter may raise a presumption against him of his having ratified or acquiesced in the voidable transaction. It remains to be stated that if he allows an unreasonable length of time to elapse before bringing his suit for rescission or cancellation, without justification or excuse, and is therefore chargeable with laches, this will be ground in equity for dismissing his bill or complaint, irrespective of any question of the statute of limitations, or though there may be no provision of the statute applicable to the case, or even though the time allowed by the statute for the bringing of an analogous proceeding on the law side may not yet have elapsed."

We think that where the gravamen of the action pleaded is one which would have been for the conscientious determination of the chancellor under rules of equity, before the general adoption of codes, the cause is one essentially in equity, and that though its form may be in ejectment, yet where the law feature, the possession, follows merely as an incident to the determination of the equitable issue on which it rests, it is not one for the recovery of specific real estate. New v. Smith (Kan.) 119 Pac. 380.

In the instant case, while the pleader undertook to make it one at law, the whole rights of the plaintiffs depend upon whether the facts, measured by the rules of equity, warranted a rescission of the deed contract of May 13, 1911. The petition pleaded no ownership, legal or equitable, of the premises, but merely such a state of facts as would invoke the equitable remedy of rescission.

We must conclude, therefore, that from the pleadings before the trial court at the inception of the trial, there was nothing to show that this action was one in ejectment, or, as designated by the statutes, an action "for recovery of specific real property." The trial court, therefore, committed no reversible error in refusing to grant a jury trial, as provided for by said first above quoted section of the statutes.

Since we conclude that, under the allegations of the pleadings, this was not an action for the "recovery of specific real property," or an ejectment action, it was nothing more than an action for the determination of an interest or claim of interest in real estate held adverse to the plaintiffs by reason of the deed of May 13, 1911, and its purpose and object was the determination of the rights of the parties under the allegations of fraud in the procurement of the said deed by the defendant Robinson, as to whether or not, under the rules of equity, the title shall be reinvested in the plaintiffs, or the plea of fraud be adjudged in favor of the defendants.

With this idea of the character of the issues raised by the pleadings, the trial court heard the evidence offered by the plaintiffs, and after hearing the evidence, the defendants interposed a demurrer thereto. In this connection, the defendants contend that if, in fact, any cause of action existed in favor of the plaintiffs, it was barred by the statutes of limitation. Considerable confusion seems to have arisen in the reported cases as to what statute of limitation is applicable in an action such as the one here, and we do not feel it possible to harmonize many of the decisions relative thereto, but when properly analyzed, the confusion is more apparent than real, due in many cases to the failure to discriminate the character of the action as to which the limitation provisions are interposed.

Section 4655, Rev. Laws 1910, provides:

"Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no time thereafter."

Then follows five subdivisions, the fourth one of which the plaintiffs contend is applicable in the instant case, which provides:

"An action for the recovery of real property not hereinbefore provided for, within 15 years."

We do not think this is the applicable provision of the statute of limitation. This is not an action within the meaning of the statutes for the recovery of specific real property, but it is rather an action for the determination of an adverse interest held and claimed in the real estate by virtue of the deed executed May 13, 1911, and the right of the plaintiffs to prevail in the dispute depends upon the determination of the issue of fraud, and whether or not the cause of action based thereon was brought within the period of limitation prescribed by the applicable provisions of the limitation statutes where the right to prevail depends upon an issue of fraud. Some of the confusion grows out of the inaccurate reading of the provisions of section 4657, Rev. Laws 1910, which are in part:

"Civil actions, other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards."

It will be noted that the last named section provides that civil actions, other than for the recovery of real property, can only be brought within the periods therein designated in the subdivisions. The plaintiffs contend that the subdivisions of said section 4657 have no application to actions affecting real estate, the latter part of subdivision 3 of which says:

"Within two years, * * * an action for relief on the ground of fraud, the cause of action in which case shall not be deemed to have accrued until the discovery of the fraud."

This is a general provision of the statute and is alike applicable to transactions and conveyances involving real estate, as well as other kinds of property. The plaintiffs not having pleaded a cause of action the gravamen of which was at law, for the recovery of real property as defined above, but only for the determination of an adverse interest growing out of a deed which the plaintiffs seek to rescind on the ground of fraud, this provision of the statutes governs their right to maintain the suit, and limits it to two years after such discovery of fraud of which complaint is made. Plaintiffs alleged that they did not discover the fraud until 1915, and that in 1916, and within two years after

the discovery of the fraud, they filed this suit; thus by their own pleading, and by inference, they assert that the cause of action did not occur until the discovery of the fraud, and that their suit conformed to said last named statutory provision, being brought within two years thereafter. Whether or not the fraud was discovered earlier than the time alleged in plaintiffs' petition was a question to be determined from the evidence given at the hearing.

In reaching a conclusion as to whether or not, from the proof of the plaintiffs, they were in full possession of all the facts prior to the time alleged, the court must give full consideration to all the physical facts surrounding the property of which the plaintiffs had knowledge, as shown by their evidence, and this brings us to a discussion of the sufficiency of the evidence offered by the plaintiffs to sustain the allegation of fraud, and to sustain the allegation that the alleged facts of fraud were not discovered by the plaintiffs until within two years before the filing of the suit, and this irrespective of what reason was given by the trial court for his judgment on demurrer to the plaintiffs' evidence.

A fair deduction from all the evidence introduced by the plaintiffs is this: The plaintiff Minnie Newman Warner is a Quapaw Indian citizen of a small degree of Indian blood. By reason of her citizenship in said tribe, she was given an allotment for which patent was issued by the government to approximately 199 acres of land, located in Ottawa county, Okla. Part of the land was located in the northwest quarter of section 6; lot 1 of said section 6 was a part thereof. In 1907 she, joined by her husband, Charles T. Warner, coplaintiff herein, executed a mining lease contract with the defendant Robinson, in which the defendants the Colemans and Harvey acquired an interest. Under this mining lease contract, some shafts or pits were sunk on certain portions of said land. The said lease contract covered the entire 199 acres. From 1907 to 1911, the defendant Robinson and his copartners and codefendants, the Colemans and Harvey, prospected on certain portions of said land. In 1910, the plaintiffs sold to one Frank Warner 15 acres of the said allotment, which was a part of lot 1, of section 6, subject to the said lease contract. In 1910, the said Frank Warner sold to these defendants his said 15 acres in fee for the sum of $5,000. In 1911, the plaintiff Minnie Newman Warner went to the office of the defendant Robinson, in the city of Miami, county seat of said Ottawa county,

Okla., for the apparent purpose of borrowing some money from Robinson. He advised her that he had no money to loan, but in the conversation stated that he and his copartners might purchase a part of the said allotment, specifically mentioning the 19 acres which lay in the northwest corner of section 6 and immediately north of the 15 acres theretofore purchased from Frank Warner. Arising by reason of this first conversation, several other conversations took place between the plaintiff Charles T. Warner and his wife and the defendant Robinson, in which the plaintiffs state that Robinson told them that ore had not been found in the shafts sunk in sufficient quantities to be of paying value; that he, Robinson, had purchased the 15 acres from Frank Warner, on which one of the shafts was sunk, for $5,000, and that the 19 acres lying immediately north thereof and in the northwest corner of the section was not worth any more than that. The negotiations finally resulted in an agreement between the plaintiffs and Robinson by which Robinson agreed to pay the plaintiffs $8,500 in cash for the 19 acres immediately north of the Frank Warner 15-acre tract, and 40 acres, being the northeast quarter of the northwest quarter of section 6, and to release the mining lease contract held by him and his copartners, on all the remainder of the 199 acres, or, in other words, the defendant Robinson and his copartners were purchasing 59 acres for consideration of $8,500 and releasing their mining lease, which carried to the plaintiffs a royalty of 5 per cent, on the other 125 acres of land, which the plaintiffs afterwards sold to other parties and placed beyond their control. That sometime after the deed of May 13, 1911, was executed, the defendant Robinson and codefendants, the Colemans and Harvey, executed a mining lease to the defendant the Lennan Lead & Zinc Company, a corporation, for a consideration of $10,000 in cash, which was by them estimated to be the approximate cost to the individual defendants of the shafts sunk on the land, and for a royalty of 25 per cent. on the lead and zinc mined therefrom. The plaintiffs lived on the southwest corner of the land. The cuttings from the ore found in the shafts were piled up on the ground in plain view of all passers-by and seen many times by both of the plaintiffs in this action. Warner himself testified in effect that there was never any attempt to conceal the cuttings from him as they came from the shafts, and anybody could come in and look at the cuttings, and that he could have taken samples and found out what they contained. Mrs. Warner testified that she saw an immense lead and zinc concentrating mill erected on the land in 1912, and it was run night and day and an immense amount of ore was being hauled therefrom to the railroad and shipped, but that she was waiting to see how the matter turned out before she brought any suit; that is, whether it was a profitable mine. The evidence further shows that the plaintiffs moved to Miami, some five miles away, and C. T. Warner, husband of Minnie Newman Warner, was for a time deputy sheriff of Ottawa county, and passed by the mill in question almost every day; removing his family back to the home place, not much more than a stone's throw from the mill on the land, in 1914; that he observed the property and the mill lighted with electricity and running night and day; and great piles of ore being taken therefrom and shipped. Which mill, in the testimony of Mr. Lennan, "stood out like a big building, and was of 500 ton capacity."

"The jig room was 120 feet long and 80 feet wide, the derrick 50 feet high and the tailing elevator 60 feet high, and was next to the largest mill in that mining district; that the mill was built in the spring and summer of 1912, and continued to operate for many years thereafter."

Mr. Lennan further testified for the plaintiffs:

"We ran the mill night and day and the mill, tram, tram hoist and derrick was lighted with electric lights every night and when operating, this mill and hoist made considerable noise. * * * This ore found on the land was peculiar, as it was nearly vertical, standing nearly up and down with about a 45 degree pitch to the northwest, and was at a depth of about 320 feet. From my information which I now have after having mined out this property and having abandoned it, I would say that the mineral that has been discovered by me in actual operations on that portion of the ten acres that lies north of the eight rod strip (which was on the Frank Warner land) did not justify the expenditure of the necessary amount of money in order to acquire it and place it on the market. I mean it cost us more to get it out than we got out of it and it was not profitable."

The evidence further discloses that the shaft from which the ore was taken was drilled on a strip on the north edge of the Frank Warner land, about 8 rods in width, and from this shaft tunnels were dug out to the north and northwest on to part of the land purchased May 13, 1911. The defendant Lennan testified that from his best estimate at least $250,000

worth of the ore of the $500,000 approximately taken from the mine came from the Frank Warner land. This, in substance, was the most important evidence in behalf of the plaintiffs, and to it the court sustained a demurrer and entered judgment for the defendants. Even if the defendant Robinson stated to the plaintiffs that no ore had been found on this land in paying quantities, it apparently proved to be the facts after the property was completely mined out. We think the proper rule as to such provisions is found in the case of Gordon v. Butler, 105 U. S. 553, and is as follows:

"The law does not fasten responsibility upon one for expressions of opinion as to matters in their nature contingent, and uncertain. Such opinions will probably be as variant as the individuals who give them utterance. A statement of an opinion assigning a certain value to property like a mine or a quarry not yet opened is not to be pronounced fraudulent because the property upon subsequent development may prove to be worthless; nor is it to be pronounced honest because the property may turn out of much higher value. * * *

"Whenever property of any kind depends for its value upon contingencies which may never occur, or developments which may never be made, opinion as to its value must necessarily be more or less of a speculative character; and no action will lie for its expression, however fallacious it may prove, or whatever the injury a reliance upon it may produce. The determination of its truth or falsity, until the contingency occurs or becomes impossible, would lead the court into investigations for which they have no fixed rules to guide their own judgments or to instruct juries.

"The general rule is that, whenever property of any kind depends for its value upon contingencies which may never occur, or developments which may never be made, opinion as to its value must necessarily be more or less of a speculative character; and no action will lie for its expression, however fallacious it may prove, or whatever the injury a reliance upon it may produce. Gordon v. Butler, 105 U. S. 553, 26 L. Ed. 1166; Mumford v. Tolman, 157 Ill. 258, 41 N. E. 617."

From a careful reading of all the evidence introduced on behalf of the plaintiffs, we are convinced that the plaintiffs knew in 1912 and 1913 as much of the character of the ore and as much as to the alleged fraudulent inducements of the defendant Robinson, if it be conceded there were any, to lead them to execute the deed, as they did at the time they came in contact with Paul Ewert, their attorney, who, by his testimony as to an alleged conversation which took place seven years

before the suit was filed, undertook to supply the missing links in the evidence of the plaintiffs. Measured by the proper rules of law governing the limitation of an action such as this, and the character of evidence necessary and required to upset the conveyance on the ground of fraud, the judgment of the trial court in favor of the defendants was correct, both on the ground that the alleged cause of action was barred by the statutes of limitation, and the insufficiency of plaintiffs' evidence to make out a case on the merits. Mastin v. Noble, 157 Fed. 506; Atlantic Delaine Co. v. James (U. S.) 24 L. Ed. 112; Weissenfels v. Cable (Mo.) 106 S. W. 1028; 9 C. J. 1254; Anderson v. Anderson (N. D.) 115 N. W. 836; Rardin v. Scruggs, 51 Okla. 131, 151 Pac. 609.

For the reasons given, the judgment of the trial court in favor of the defendants is affirmed.

JOHNSON, C. J., and McNEILL, KENNAMER, and HARRISON, JJ., concur. KANE, J., concurs in the conclusion.