## Bertha Kammer, et al. v. George Glenz.

### Gen. No. 4,416.

1. Usurious—*when contract is.* A contract is usurious which provides that in a particular contingency which may arise an amount of interest larger than the authorized legal rate may be received.

Foreclosure proceeding. Error to the Circuit Court of Lake County; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded with directions. Opinion filed March 8, 1905.

GEORGE E. DAWSON, for plaintiffs in error; J. L. O'DONNELL, of counsel.

HANNA & MILLER, for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

On August 17, 1898, Bertha Kammer and John Kammer, her husband, being indebted to George Glenz in the sum of $5,000, delivered to him their promissory note of that date for the payment of said principal sum to Glenz in two years from date, with interest thereon at the rate of seven per cent. per annum payable semi-annually, such interest being further evidenced by four interest notes of that date, each for the sum of $175, executed by said Bertha and John Kammer, payable at the end of each six months until the maturity of said principal note. To secure said notes and indebtedness Bertha and John Kammer conveyed certain real estate in Lake county, Illinois, to Joseph Staab, trustee. This suit was a bill in equity filed May 24, 1902, by George Glenz against said Kammers and said trustee and

Kammer v. Glenz.

a successor in trust, for the foreclosure of said trust deed because of non-payment of said principal note and a part of the interest thereon. Bertha and John Kammer answered the bill, setting up a certain other contract entered into on the same day and as a part of the same transaction as the giving of said principal and interest notes and trust deed, and averring that thereby said Glenz contracted to receive usury. The cause was referred to a master, who took the proofs and reported that said instrument did not taint the transaction with usury, as claimed by the defendants. Bertha and John Kammer filed objections to said report, which the master overruled, after correcting his report in another particular not now material. It was stipulated and agreed that the objections filed by said Bertha and John Kammer should be treated as exceptions to the master's report before the court. Thereupon the court found that said contract set up in the answers of Bertha and John Kammer did not taint the principal and interest notes with usury as claimed by them, and decreed a foreclosure of said trust deed. Bertha and John Kammer have sued out this writ of error to reverse the decree. The sole question presented is whether the transaction was tainted with usury.

Defendant in error in his brief here asserts that said additional contract relied upon by Bertha and John Kammer was signed only by them and not by Glenz. The copy thereof attached to their original answer is so signed, but they filed an amended answer, in which they set up said defense of usury much more fully, and said contract is also attached to that amended answer as an exhibit, and it there appears signed by John Kammer and George Glenz, both under seal. The instrument embodied in the master's report of the testimony taken before him is signed by John Kammer and George Glenz. That instrument, after reciting the making of this loan by Glenz, and the execution of the promissory note by the Kammers for the principal sum, with interest at seven per cent. per annum, payable semi-annually, states that it is agreed between the parties

that further to secure Glenz the said John Kammer, as soon as a certain John Kammer Company; a corporation for the manufacture and sale of incandescent lamps and electrical appliances, then in course of organization, should be organized, and within two months from the date thereof, should assign and pledge to the said Glenz 350 shares of stock of the par value of ten dollars per share in the said Kammer Company; that for a period of two years from the date of said agreement Glenz should have the option to purchase and become the absolute owner of said 350 shares of stock by indorsing on said $5,000 note the sum of $2,500 as a payment thereon. Said contract further provided that "during the time that the said George Glenz shall hold the said 350 shares of stock in said John Kammer Company as collateral security for the loan as hereinbefore set forth, the said George Glenz shall be entitled to receive in his own right all dividends which shall be earned and declared during said time upon said 350 shares of stock of said John Kammer Company." It is clear that the contract last above recited was executed at the same time as the principal and interest notes and the trust deed, and was a part of that transaction. By the principal and interest notes Glenz contracted to receive upon his loan to the makers, the highest rate of interest permitted by law. By this additional contract it was provided that certificates of stock in a corporation then being organized should be placed in the hands of the payee as collateral security, and that while he held the said shares of stock as such collateral security he should be entitled to receive in his own right all dividends which might be earned and declared upon said shares of stock during that time. Section 6 of chapter 4 of the Revised Statutes, entitled "Interest," reads, in part, as follows: "If any person or corporation in this state shall contract to receive a greater rate of interest or discount than seven per cent., upon any contract, verbal or written, such person or corporation shall forfeit the whole of said interest so contracted to be received, and shall be entitled only to recover the principal sum due to such person or corporation."

Kammer v. Glenz.

By these several instruments, when all considered together, Glenz did contract to receive more than seven per cent. interest per annum. Glenz soon thereafter received assignments in blank of several certificates of said stock, covering in all 350 shares, which he still holds. He testified that he had received no dividends upon these shares of stock. In our judgment that fact is immaterial. The stock was capable of entitling the holder to dividends. Dividends might lawfully be declared thereon. At the time this contract was entered into it could not be known or foreseen that no dividends would be declared upon this stock. In Union National Bank of Chicago v. L. N. A. & C. Ry. Co., 145 Ill. 208, a loan was negotiated at six per cent., and it was further orally agreed at the same time that the maker of the note should endeavor to secure a certain depositor for the bank, which service it was admitted would have been of value to the bank, and further that in case it failed to secure that depositor for the bank it would pay the bank two and one-half per cent. upon the loan in addition to the interest reserved in the note. It was held that this was an usurious agreement, and that the contract was for a rate forbidden by law. In that case the maker might have secured the depositor for the bank, in which case it would not have been bound to pay the extra per cent., but as the contract provided for a contingency in which the payee should receive more than legal interest, the contract was usurious. The same principle applies here.

It is urgently insisted that the words above quoted from the contract relied upon by the Kammers do not mean that Glenz was to receive such dividends in his own right, but that he should apply the same as payments upon the principal note. It would do violence to the language used to give it that construction. The contract provides that if Glenz elects to purchase the stock the price at which he may take it shall be indorsed upon said $5,000 note as a payment thereon. Then it is expressly agreed in the contract that as to the dividends which may be earned and

declared before he becomes such purchaser and while he holds the stock as collateral security he shall be entitled to receive them "*in his own right.*" Those words cannot be construed to mean that he shall be entitled to receive such dividends for the Kammers and in their right, and as a payment by them on the note.

The decree of the court below will therefore be reversed and the cause remanded with directions to that court to enter a decree for the principal sum only, after deducting therefrom the amount of all payments that have been made by the defendants upon the debt.

*Reversed and remanded with directions.*