THE FIRST NATIONAL BANK OF ATWOOD, ILLINOIS,

*v.*

CALLIE DREW.

*Opinion filed April 18, 1907.*

1. MORTGAGES—*limits of rule that grantee of mortgagor cannot question validity of mortgage.* It is only in cases where the grantee of a mortgagor has purchased the property on the basis of a clear title at an agreed price and assumed to pay the mortgage debt as a part of the consideration, or where the amount of the mortgage debt has been deducted from the price of the land on the basis of a clear title, that the grantee is estopped to question the validity of the mortgage.

2. SAME—*when a mortgagor's grantee is not estopped to claim usury.* A voluntary conveyance by a mortgagor to his wife for the purpose of protecting the property against further dissipation by the mortgagor, who was a spendthrift and incapable of caring for his property, does not estop the wife to show, upon a bill of accounting in which the mortgage debt was involved, that such debt was usurious.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Douglas county; the Hon. SOLON PHILBRICK, Judge, presiding.

On the 27th of October, 1897, appellee's husband, Levi Drew, was the owner of an estate in certain lands lying in Douglas and Moultrie counties. He received his title by a conveyance from his father. Just what this title was is not involved and is not made to appear. The appellant says it was a life estate, while appellee claims it was uncertain whether it was a life estate or a fee. On said date above mentioned Levi Drew gave his note to the Atwood Bank for the sum of $1556.26, payable on or before two years after date, with interest at seven per cent per annum from date. This note was secured by mortgage on his interest in the Moultrie county lands, and to further secure it he

assigned to said bank a policy of life insurance on his life for $2000, the bank to pay the annual premiums on said policy after the assignment and charge the said Drew therewith. He also assigned to the bank the leases on said lands. Some payments were made from time to time until August 31, 1901, when Levi Drew and wife conveyed all the lands by quit-claim deed to Henry Albers, who was a tenant on some of the Douglas county land, and on the same day Albers conveyed the same land by quit-claim deed to appellee, wife of Levi Drew. Some further payments of principal and interest were made on the indebtedness to the bank until July 1, 1902, when the First National Bank of Atwood succeeded the Atwood Bank and became the owner of all the assets of said Atwood Bank, including the Drew indebtedness and securities therefor. February 5, 1903, appellee and her husband borrowed a further sum of $600 from appellant, for which they gave their note payable on demand, and secured it by assigning to appellant the leases on all the other lands not theretofore assigned. Levi Drew appears to have been a spendthrift and incapable as a business man, and certain judgments were obtained against him, by which some of the lands had been sold and sheriff's deeds issued to the purchaser therefor. Apparently said lands were sold for less than their value, and appellee being desirous of reclaiming them and securing the title thereto, on the 7th day of April, 1903, together with her husband, entered into another agreement with appellant by which appellant agreed to advance a further sum of $1500, which was the amount necessary to obtain the title back to the lands sold, and to secure the payment of said $1500 she and her husband conveyed to Parsons, the president of appellant, by warranty deed, twenty acres of land in Moultrie county. In further pursuance of said agreement, Slater, the cashier of appellant, secured the conveyance to himself of the title to the lands that had been sold and for the reclaiming of which the $1500 had been advanced, to be held as additional

security for the original indebtedness and for all advances made in securing title. It was further agreed that a petition should be filed by appellee for the appointment of Slater as conservator for her husband on the ground that he was a spendthrift, and that said Slater should hold the title to the lands conveyed to him and all the leases to all the lands, collect the rents therefrom, and after paying appellee $25 per month for living expenses for her and her husband, and taxes on the land, apply the residue upon the indebtedness to the bank. In the month of April, and within a few days after the agreement, appellee filed her petition for the appointment of Slater as conservator for her husband, and such proceedings were had thereon that said Slater was appointed such conservator. He retained control of the land and the collection of the rents thereafter until appellee filed the bill in this case to the March term, 1905, of the Douglas county circuit court, for an accounting. The bill, among other things, charged that $438.06 of the $1556.26 note was usury. After answer and replication the cause was referred to the master to take the proof and report his conclusions of law and fact. Upon the question of usury the master found and reported that Drew only received $1236.56 from the bank on his note for $1556.26. He further found and reported that the object of the conveyance from Levi Drew to appellee was to enable her to procure a loan for the purpose of paying the indebtedness to the bank, and that in taking the conveyance the appellee assumed the indebtedness evidenced by said note and was therefore estopped from pleading usury. The master reported that the amount due upon said note was $1221.98. The court sustained exceptions of appellee to this portion of the master's report and held that the appellee was not estopped from pleading usury, and decreed that the amount due on the said $1556.26 note was $447.67. The total amount found due appellant upon the accounting by the master was $2792.39. The total amount the court found

due by its decree was $2018.08. The entire difference between these two amounts results from the court's allowance of the defense of usury against the $1556.26 note. The bank prosecuted an appeal from the decree of the circuit court to the Appellate Court, where the decree of the circuit court was affirmed, and a further appeal is prosecuted to this court.

ECKHART & MOORE, for appellant.

LEFORGEE & VAIL, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The only question raised in this court by appellant is the correctness of the action of the chancellor in allowing the defense of usury. It is not denied that the $1556.26 note transaction was usurious, and that instead of Drew receiving the amount of said note he only received $1236.56. The contention of appellant is, that a debtor may set apart and dedicate a certain fund or property to the payment of a usurious debt, and the person who has received the fund or property to make such payment cannot withhold it on the ground of usury; also, that the conveyance to appellee was for the purpose of vesting title in her subject to the payment of the mortgage indebtedness, and that this conveyance was an affirmance of the usurious contract, and appellee, by accepting title, is estopped from setting up the defense of usury. While there is authority to sustain these propositions, we do not think this case is within the principles announced in such authorities, and they are therefore not applicable, for the reason that the evidence does not show a setting apart by Levi Drew of the lands for the payment of the indebtedness nor the conveyance of them to his wife to be used by her in paying said indebtedness, nor was the conveyance to appellee made for such purpose nor under such circumstances as that she must be held to have as-

226—40

sumed the payment of the usurious indebtedness and be thereby precluded from setting up the defense of usury. In *Crawford* v. *Nimmons,* 180 Ill. 143, it was held to be only in cases where the grantee of a mortgagor has purchased the property on the basis of a clear title at an agreed price and assumed to pay the mortgage debt as a part of the consideration, or where the amount of the mortgage debt has been deducted from the price of the land on the basis of a clear and complete title, that such grantee cannot question the validity of the mortgage indebtedness. It was also there said that if the usury was a part of the consideration in the agreement between the mortgagee and his grantee it would be an affirmance of the debt by the mortgagor, and in such case, the grantee having contracted with a view to paying the encumbrance, equity requires him to pay the debt or lose the property. That case and the cases therein cited, and *Union Nat. Bank* v. *International Bank,* 123 Ill. 510, also lay down the rule that a person in privity with the mortgagor may interpose the defense of usury, and that where there is no agreement or understanding about it the grantee of the mortgagor will have the right to make such defense.

The proof here shows Levi Drew to have been utterly incapable to intelligently and successfully manage business affairs and property. His own testimony shows him to have been a man of weak character and practically helpless in financial transactions. During the short time he had owned the property received from his father, prior to 1897, he had so managed his affairs as to involve himself largely in debt with no present ability to pay it. When some of his creditors began to press him and threaten to take his property, or a part of it, he applied to the Atwood Bank for a loan to pay some of his indebtedness. The application was made by him and refused by the bank officers, some of whom are officers of the appellant, a number of times before the loan was finally made, and while he was required to give a note for $1556.26, and secure it by a

mortgage, assignment of leases on certain lands and the assignment of a life insurance policy, he was only given $1236.56. He made very little progress in the payment of this indebtedness, but this, we think, could not have been much of a disappointment to the bank officers, for they were well acquainted with him. Not only was he making poor progress in paying the bank, but he also incurred indebtedness to other creditors, who began to take judgments against him and levy upon and sell his interest in some of the land. It must have been apparent to everyone who knew the man and had any knowledge of his affairs, that although he had property of considerable value he had not the capacity to extricate himself from his financial entanglements. Under these circumstances the title was conveyed to his wife. She paid no consideration whatever for the conveyance. The purpose of placing the title in her was to put it out of the power of her husband to dissipate and fritter it away. Notwithstanding Levi Drew testified, in answer to questions asked him by counsel for the appellant, that appellee told him she had money appropriated and borrowed to pay the $1556.26 to the bank and that it was in that way he came to deed her the land, we cannot accept this as conclusive. In view of the fact that the record shows him to have been incapable of managing his property or business, and the fact that he was in April, 1903, by the county court of the county of Douglas adjudged a spendthrift and a conservator appointed for him, we cannot accept his statement of this matter as correct, when, taking all the evidence together and all the circumstances shown by the testimony, it clearly appears the conveyance to appellee was made for the purposes and reasons we have above indicated. By accepting the title she assumed no burden or obligation for the payment of her husband's debts, especially one that was illegal, nor did she do anything to estop herself from protecting the property against an invalid and unjust claim. No such thought or intention was in her mind at the time

she received the title, as a matter of fact, and she neither said nor did anything out of which the law would raise an estoppel against her.

Appellee has assigned certain cross-errors. We have examined them, and are of opinion she was not prejudiced by any of the rulings or holdings of the circuit and Appellate Courts.

In our opinion the decree of the circuit court was just and is sustained by the law and the evidence. The judgment of the Appellate Court affirming said decree of the circuit court is therefore affirmed.

*Judgment affirmed.*