Central Life Insurance Company of Illinois, Appellee, v. George M. Sawiak and Pioneer Trust & Savings Bank, Appellants.

**Gen. No. 35,159.**

Opinion filed October 9, 1931.

Frank H. Novak, for appellants.

Reginald C. Darley, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

This appeal is prosecuted to reverse a foreclosure decree, entered February 6, 1931, wherein the superior court, following the master's report, found that there was due to complainant on January 7, 1931, the sum of $1,912.50, and adjudged that the premises be sold if said sum, including interest and costs, be not paid, etc.

In complainant's bill, filed August 27, 1930, it is alleged that on September 7, 1926, George M. Sawiak, a bachelor, being indebted in the sum of $1,500, executed and delivered his promissory note in that sum, payable to bearer five years after date at the office of the Ridgeway State Bank, Chicago, with interest at seven (7) per cent per annum, as evidenced by ten interest coupon notes, each for $52.50, payable to bearer on March 7 and September 7 in each year; that to secure the payment thereof Sawiak, on September 7, 1926, and as owner, executed and delivered a trust deed (containing usual covenants) conveying to the Chicago Title & Trust Co., as trustee, "lot sixteen (16) in block twelve (12) in Sawiak & Co.'s first addition to Addison Heights" in Cook county, Illinois, which trust deed was recorded in the recorder's office of Cook county on September 9, 1926, and is a first mortgage on the premises; that the interest coupon notes Nos. 1 to 6 inclusive have been paid; that complainant is the owner and holder of the principal note and of the remaining interest coupon notes, Nos. 7 to 10 inclusive; that default has been made in the payment of interest coupon note No. 7, for $52.50, due on March 7, 1930; that by reason thereof complainant elected to declare the principal note due and payable

(as it had the right to do under the trust deed); that there is now due to complainant said principal sum, accrued interest due on March 7, 1930, and other accrued interest; that Sawiak conveyed his equity in the premises to Pioneer Trust and Savings Bank, as trustee, under the provisions of a trust agreement, dated February 14, 1928, and known as trust number 1820; and that said bank now claims to be the legal owner of the premises, subject to complainant's lien. The bill claimed reasonable solicitor's fees and other expenses incident to a foreclosure, and concluded with the usual prayer.

In the joint and several answer of Sawiak and the Pioneer Trust & Savings Bank, as trustee, filed October 29, 1930, they denied that complainant was entitled to have said principal note declared to be due because of the non-payment of interest note No. 7, and alleged that "said loan of $1,500, as represented by the note and trust deed described in the bill, is usurious," etc. Defendants further alleged that, at the time of the making of the loan, "the Ridgeway State Bank, in addition to the seven (7) per cent interest reserved to be paid on said loan as represented by the note and trust deed being foreclosed, and in addition to the proper charges for recording fees, guaranty title policy and fire insurance premium, wrongfully and illegally charged and retained five per cent of the loan, or $75, *as a commission* for making said loan"; that the $75, so withheld by said bank, in addition to the interest on said loan of 7 per cent and said proper charges, "is usury, and unlawful and contrary to the statutes of Illinois"; and that complainant "is not entitled to recover any sum as interest," and is "only entitled to a lien on said real estate for the legal amount found to be due, after deducting the usurious payments of interest and any moneys retained by the Ridgeway State Bank as a commission."

After defaults had been taken of other defendants including Norman Gilbert and Myrtle Gilbert, his wife, and after the cause had been put at issue, there was a reference to a master, and hearings were had before him during November and December, 1930. Early in January, 1931, he drafted a report in which, after making numerous findings, he recommended the entry of a decree of foreclosure in the sum of $1,912.30, including the sum of $200 as complainant's solicitor's fees. Among the findings of the master are:

*Fifth.* That on and prior to March 7, 1930, complainant was the owner of the principal note for $1,500; that by reason of the default in the payment of interest note No. 7, due on March 7, 1930, complainant, as the legal holder and owner of the unpaid indebtedness, became entitled to declare the whole of said indebtedness due and payable and to foreclose the trust deed.

*Thirteenth.* That there is now due to ·complainant, for principal, interest, cash advanced, stenographer's charges and solicitor's fees, the sum of $1,912.30, as shown by the following itemized statement:

| | |
|---|---:|
| Interest Coupon No. 7 due March 7, 1930. | $52.50 |
| Interest thereon at seven per cent from March 7, 1930, to date hereof......... | 3.07 |
| Interest Coupon No. 8 due September 7, 1930 ............................. | 52.50 |
| Interest thereon at seven per cent from September 7, 1930, to date........... | 1.23 |
| Principal note ....................... | 1,500.00 |
| Interest at seven per cent from September 7, 1930, to date.................. | 35.00 |
| Amount paid to Chicago Title & Trust Co. .............................. | 43.00 |
| Amount paid for photostatic copies..... | 2.10 |
| Amount paid stenographer's charges.... | 22.90 |
| | $1,712.30 |

Amount allowed to complainant for solic-
itor's fees......................... 200.00

Total ...........$1,912.30

which amount the master finds to be a valid, existing
indebtedness due to complainant from defendant,
Sawiak, and for which amount complainant is entitled
to a valid, existing, first lien on said real estate.

To these two findings the defendant, Sawiak, filed
objections with the master, to the effect that the master
in making them had erred, and should have found that
the loan of $1,500, made by the Ridgeway State Bank
to defendant, as well as the note and trust deed evi-
dencing the loan, "were usurious, and that complain-
ant was not entitled to any sum for interest, and that
defendant was entitled to have credit for all the inter-
est paid on account of the loan, and also for the five
per cent commission ($75) paid to said Ridgeway State
Bank." Thereafter, on January 14, 1931, the master
drafted a supplemental report, in which he stated that,
after giving "due consideration" to the objections, he
overruled them. He gave no reasons why he did so;
nor did he discuss defendant's "usury" contention at
all. Nor did the superior court in the decree appealed
from make any findings concerning said "usury" con-
tention. The objections were ordered to stand as ex-
ceptions, and the court in the decree, after overruling
the exceptions, confirmed the master's report, and fixed
the master's fees at the sum of $56 to be taxed as
costs.

Some of the other findings of the master, sustained
by the evidence, are as follows:

*Sixth.* That on October 9, 1926 (about one month
after the execution of the trust deed) Sawiak entered
into a written agreement (recorded October 28, 1927)
with Norman Gilbert and Myrtle Gilbert, his wife,
whereby Sawiak agreed that if they made certain pay-

ments and performed certain agreements, he would convey the premises to them.

*Seventh.* That on February 14, 1929, Sawiak conveyed the premises to Pioneer Trust and Savings Bank, as trustee, and that on the same day it, as trustee, executed a certain trust agreement, known as Trust No. 1820, wherein it certified that it was about to take title to certain described real estate, including the real estate now involved, and that Sawiak "is the person entitled to the entire interest in said real estate."

*Eighth.* That the two Gilberts, under the agreement of October 9, 1926, made a down payment of $300, and certain regular monthly payments (of about $35 per month and aggregating in principal and interest about $1,500) until April 14, 1930, when they defaulted and abandoned the premises and surrendered said agreement to Sawiak; and that on September 20, 1930, they executed and delivered their quitclaim deed (recorded November 22, 1930) of all their right and interest in the premises to said Pioneer Trust & Savings Bank, as trustee for Sawiak under said trust agreement known as Trust No. 1820.

It appears from said written agreement (introduced in evidence) that the two Gilberts agreed to pay to Sawiak the total sum of $4,250—$300 cash down and the balance in payments of $35, or more, per month, commencing November 9, 1926; that "when $2,750 of the purchase price had been paid," together with all interest, costs, taxes, assessments and other charges, Sawiak agreed to deliver a deed of the premises to the Gilberts and to accept from them notes and a trust deed upon said premises, "subject to a first mortgage of $1,500, bearing interest at the rate of 7 per cent" (being the trust deed herein sought to be foreclosed); and that the Gilberts further agreed "to pay the cost of the renewal of said mortgage."

On the hearing before the master it appeared from complainant's evidence that some time prior to March

7, 1930, complainant purchased for a valuable consideration and in the usual course of business the principal note of $1,500 ''from the Ridgeway Bond & Mortgage Company''; that the first six interest notes had been paid; that interest note No. 7, due on March 7, 1930, was not paid; that in consequence thereof complainant elected to declare the entire indebtedness due and payable and to commence the present foreclosure proceeding; that the sums of $43, $2.10 and $22.90, mentioned in the master's report, were actually expended by complainant and were proper charges; and that the sum of $200 was a reasonable charge for services rendered by complainant's solicitors.

On the hearing it also appeared from the undisputed testimony of defendant, Sawiak (corroborated in some particulars by a written statement delivered to him by the Ridgeway State Bank, dated October 18, 1927), substantially as follows: Early in September, 1926, and shortly prior thereto, Sawiak, engaged in a real estate and building business, was building 16 houses on different lots in his ''Addington Heights'' subdivision. Desiring to obtain 16 separate building loans he negotiated with the Ridgeway State Bank, through its vice president, John Schrik, for the loans, and the bank agreed to make them, each on the basis of ''7 per cent interest per annum *and* a commission of 5 per cent on the particular sum loaned to be paid to the bank.'' The loans aggregated $28,000. The one here involved is for $1,500 and known as Loan No. 698. The amount of each loan was credited to Sawiak's account in the bank, less said commission of 5 per cent, and expenses for bringing down the title, recording fees, fire insurance premiums, etc. As the building work progressed the bank, at Sawiak's request, paid out such sums as were required for payment of labor and materials,—debiting Sawiak's said account therefor— and also paid certain sums direct to Sawiak. It clearly appears that the 5 per cent commission was retained

by the bank and was not paid to any broker for negotiating the loans.

Considering the evidence and the law applicable thereto, we are of the opinion that there is merit in defendants' defense of usury, as pleaded in their answer, and that the decree appealed from should not be allowed to stand in its entirety and should be modified. In 3 Bouvier's Law Dictionary (Rawle's 3rd Rev.) p. 3380, usury is defined to be "the excess over the legal rate charged to a borrower for the use of money; taking an illegal profit for the use of money." In *Clemens v. Crane*, 234 Ill. 215, 229, it is said: "To constitute usury, in contemplation of law, the following essential elements must be present: (1) There must be a loan or forbearance; (2) the loan must be of money or something circulating as money; (3) it must be repayable absolutely and at all events; (4) something must be exacted for the use of the money in excess of and in addition to the interest allowed by law." When the loan in question was made to Sawiak (September, 1926) it was provided in sections 4, 5 and 6 of chapter 74, Cahill's Ill. St. 1925, ¶¶ 4, 5 and 6, pp. 1466-7, as follows:

"Sec. 4. In all written contracts it shall be lawful for the parties to stipulate or agree that seven (7) per cent per annum, or any less sum of interest, shall be taken and paid upon every one hundred (100) dollars of money loaned or in any manner due and owing from any person to any other person or corporation in this State, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided; . . .

"Sec. 5. No person or corporation shall directly or indirectly, accept or receive, in money, goods, discounts, or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance

or discount of any money, goods, or thing in action, than as above prescribed, except from a corporation.

"Sec. 6. If any person or corporation in this State shall contract to receive, except from a corporation, a greater rate of interest or discount than seven (7) per cent upon any contract, verbal or written, such person or corporation *shall forfeit the whole of said interest* so contracted to be received, and shall be entitled only to recover the principal sum due to such person or corporation, and all contracts executed after this Act shall take effect, except contracts in which a corporation shall be the obligor, which shall provide for interest or compensation at a greater rate than herein specified, on account of non-payment at maturity, shall be deemed usurious, and only the principal sum due thereon shall be recoverable."

In *Hirsh v. Arnold*, 318 Ill. 28, 42, 43, it is said: "The court was warranted in its conclusion from the evidence that the loan was made to appellants by Dreyer & Co. (mortgage bankers), and that the notes were later sold and transferred to Hirsh (complainant); that the interest was usurious, as the bankers charged seven per cent interest in the notes, which appellants agreed to pay, and in addition thereto two and a half per cent commission. The record does not disclose that Hirsh had notice of the fact that the notes were tainted with usury. Nevertheless, a purchaser of a mortgage or trust deed takes it subject to all the infirmities to which it is liable in the hands of the mortgagee, and in equity the mortgagor is entitled to every defense against the assignee which he could have made against the original mortgagee. . . . The defense of usury in a foreclosure suit is just as effectual against an innocent purchaser before maturity as it is against the original mortgagee." In *Payne v. Newcomb,* 100 Ill. 611, 623, it is said: "The rule in this court is, that usury paid with the principal cannot be recovered back,

but so long as any portion of the principal remains, out of or in connection with which the usurious interest accrued, it may be deducted from or set off against such principal.'' This rule has been followed in many later cases. (*Ammondson v. Ryan,* 111 Ill. 506, 511; *Harris v. Bressler,* 119 Ill. 467, 472–3; *Cobe v. Guyer,* 237 Ill. 568, 573; *Stober v. Ehrhart,* 223 Ill. App. 543, 547; *Lobdell v. Williams,* 255 Ill. App. 489, 493.) In the last cited case it is said (p. 493): ''It is also insisted by appellee that the payments on interest by appellant were voluntarily made and that, that being true, he is not entitled to credit therefor. While usurious interest, voluntarily paid, cannot be recovered back where the note or loan tainted with usury has been paid in full and the transaction has been closed, yet, where any part of the principal or interest remains unpaid, the maker of the note is entitled to have credited thereon all payments made on interest, either on the original note or on the note or notes given in renewal thereof.'' But the fact that the note or loan here involved is tainted with usury does not render the trust deed, securing the indebtedness, void. Its covenants and provisions remain binding. In *Union National Bank v. International Bank,* 123 Ill. 510, 514, it is said: ''It (the statute in relation to usury) does not declare the *mortgage* securing indebtedness on which usurious interest is charged, void. It merely declares the *interest* contracted to be received, *void.* . . . The mortgage, in such case, therefore, is valid, and must be enforced, to secure the payment of the money actually loaned. The usury only affects the accounting.'' (See, also, *Matzenbaugh v. Troup,* 36 Ill. App. 261, 264.)

Counsel for complainant contends in substance that because Sawiak made the written agreement with the Gilberts of October 9, 1926 (wherein he agreed that when they had made payments to him in the aggregate sum of $2,750, he would convey the premises to them

subject to the trust deed herein sought to be foreclosed, etc.) and because he accepted from them partial payments to a considerable amount, these acts of his constitute an affirmance by him of the validity of the indebtedness secured by said trust deed (even though tainted with usury) and estop him from raising the question of usury. We cannot agree with the contention. It appears that prior to the filing of the present bill the Gilberts defaulted on their agreement, abandoned the premises and surrendered the agreement to Sawiak. It further appears that Sawiak, when the present bill was filed, was the equitable owner of the premises,—the legal title, subject to said trust deed, being in the Pioneer Trust and Savings Bank, as trustee for Sawiak. Had the Gilberts, prior to the filing of the present bill, made payments on said agreement to the aggregate sum of $2,750, or more, and had Sawiak (or his said trustee at his direction) conveyed the premises to the Gilberts subject to said trust deed, and the amount of the indebtedness secured thereby had been assumed by the Gilberts or been deducted from the purchase price, neither they nor Sawiak could have been heard to complain of the usury in the indebtedness secured by said trust deed. (*Essley v. Sloan,* 116 Ill. 391, 397–9; *First Nat. Bank of Atwood v. Drew,* 226 Ill. 622, 626.) But the Gilberts did *not* consummate the agreement that they made with Sawiak, and the latter did *not* convey to them his equity in the premises. And the situation, as it seems to us, is the same as if Sawiak had never made any agreement with the Gilberts. And we fail to see wherein, under the facts disclosed, any such estoppel as claimed by counsel can arise as against defendants and in favor of complainant. The essential elements of an estoppel are lacking.

Our conclusion is that the decree appealed from should be modified as to the amount adjudged to be paid to complainant. In the account as stated by the

master as above mentioned (restated in the court's decree) all interest items therein should be eliminated, but we think that the charges of $43, $2.10 and $22.90, are proper, as is the allowance of $200, for complainant's solicitor's fees. The indebtedness as evidenced by the principal note is $1,500, and this sum should be allowed—*less the following deductions* (a) $315 (being the aggregate of the interest payments as evidenced by the six paid interest coupon notes of $52.50 each), and (b) $75, the amount exacted for the five per cent commission by the Ridgeway State Bank. The aggregate of these deductions is $390.

For the reasons indicated the decree of the superior court is reversed and the cause is remanded with directions to enter a modified decree against defendants, not inconsistent with the views herein expressed.

*Reversed and remanded with directions.*

KERNER and SCANLAN, JJ., concur.