Chicago Title and Trust Company et al., Appellees, v.
James F. Kearney et al., Appellants.

Gen. No. 38,232.

Opinion filed November 12, 1935.    Rehearing denied November 26, 1935.

CONCANNON & DILLON, of Chicago, for appellants.

ISAAC B. LIPSON and A. C. LEWIS, both of Chicago, for appellees.

MR. JUSTICE MATCHETT delivered the opinion of the court.

I. This appeal is by James F. and Peter E. Kearney, personally and as executors and trustees of the estate of William L. Kearney, deceased, from a decree of foreclosure and sale entered January 21, 1935. The cause was heard upon exceptions to the report of a master. The exceptions were overruled, and a decree finding a total sum due of $155,669.49, with costs, was entered. The decree directed that in default of payment of the amount found due the premises should be sold. Defendants ask the reversal of this decree.

II. August 1, 1933, one of the complainants paid on account of taxes levied on the premises for the years 1928, 1929 and 1930, the sum of $31,363.16, which included the sum of $4,920.59 charged and paid for penalties. These penalties were included in the total indebtedness found due. The trust deed provides that the grantor should pay the taxes and assessments due on the first day of May in each year, and that the trustee or holder of the indebtedness may at any time, without inquiring into the validity thereof, pay any tax or assessment "on said lands or redeem from any sale therefor, or purchase ·any tax sale certificate or tax title, or other title, lien or claim adverse to the estate hereby granted, and expend such amount therefor as it may deem reasonable," and make other disbursements as may be "necessary or proper for the preservation of the security hereunder"; that such sum expended shall form so much additional indebtedness "secured hereby."

Defendants contend, on the authority of *Webster v. Nichols,* 104 Ill. 160, that it was the duty of complain-

ants to pay the taxes *before* the penalties accrued; that it was negligence on their part not to do so. Penalties, it is said (truly enough), are not taxes but merely methods of enforcing the payment of taxes. Defendants cite cases such as *Dixon v. Mayor, etc., of Jersey City,* 37 N. J. L. 39.

The provisions of this trust deed are much broader than were the provisions of the lease construed in *Webster v. Nichols,* in that this trust deed gives to the holder of the indebtedness authority to redeem from tax sales. Redemption could not legally be made without paying penalties, and the authority to pay the penalties is therefore necessarily included in the authority to redeem. The same observation might justly be made as to the authority to purchase a tax sale certificate, a tax title or a claim adverse, all of which are expressly given by the trust deed. The trust deed is also distinguishable from the lease in *Webster v. Nichols,* in that the objects and covenants are fundamentally different.

Moreover, the record discloses that while these defendants were in possession of the premises in lieu of the appointment of a receiver, an order by agreement expressly directing that these penalties should be paid was entered by the court. Complainants by the terms of the trust deed were not obligated to pay these taxes and penalties at all. The trust deed merely gave to them the privilege of doing so at their election. We hold defendants' contention in this respect without merit.

III. It is next contended that the decree should be reversed because the loan and the extension of it were usurious. The original loan was for the sum of $135,000, was for the term of five years and was to draw interest, payable semiannually, at the rate of 5½ per cent. It was made March 24, 1923, at the Foreman Trust & Savings Bank, and a commission of $1,250 was charged to and collected from the mortgagor. At the

maturity of the note $35,000 was paid reducing the principal indebtedness to $100,000. May 1, 1928, an extension agreement was executed, whereby payment of the principal note was extended to May 1, 1933, upon condition that interest be paid during the extended period at 5½ per cent per annum, payable semi-annually, according to the tenor of 10 coupons representing the interest which would accrue until maturity. At this time the bank charged and collected a commission of $1,000 for the extension. The notes and trust deed provided, in substance, that if default should be made in the payment of any one of the interest notes when due, or in case of a breach of either of the covenants contained in the trust deed, then at the election of the holder and without notice, "said principal sum, and all interest accrued thereon, shall at once become due and payable." In other words, the holder of the indebtedness was given power to accelerate the payment date in case of a default or violation of a covenant. Defendants contend that this provision tainted the contract with usury, because (as we understand them) under it the lender, upon the contingency of a default in the payment of the first instalment of interest, might declare the whole loan due and recover the accrued interest, which together with the compensation paid for the use of the money paid by way of commission to the lender, would thus amount to more than the lawful rate provided by the statute. They cite cases holding that a commission charged by a lender and not paid to a broker is not a commission at all but an additional charge for the use of money which will be added to the interest charged as such, in determining whether the loan is in fact tainted with usury. *Central Life Ins. Co. v. Sawiak,* 262 Ill. App. 569; *I. C. Bank & Trust Co. v. Geary,* 274 Ill. App. 327. In the last analysis, the question involves a construction of section 5 of the Interest Act. (Ill. State Bar Stats. 1935, ch. 74, sec. 5, p. 1940.)

Defendants contend that the loan is usurious within the meaning of the statute where the contract of the parties is such that there is any contingency which may arise by which the lender may obtain more than the lawful rate of interest; that such contingency was possible under the terms of these notes and the trust deed and therefore under the provisions of section 6 of the interest statute, the sum of $66,600 being the interest paid on the loan and the extension thereof, plus the commissions paid, should be deducted from the principal amount of the indebtedness found due.

There is no proof that complainant knew of the commission charged, but it seems to be conceded that if the defense of usury in fact existed as between the original parties to the transaction, such defense on foreclosure is as effectual against an innocent purchaser before maturity as it was against the original mortgagee. *Central Life Ins. Co. v. Sawiak,* 262 Ill. App. 569; *Hirsh v. Arnold,* 318 Ill. 28, 38. Defendants admit that the rule of law as to usury for which they contend has never been approved by our Supreme Court. They also admit that a contrary rule was expressed by this court in *Chicago City Bank & Trust Co. v. Bremer,* 189 Ill. App. 258. They urge, however, that the view for which they contend was not vigorously pressed in that case; that the decision was rendered more than 20 years ago, and say that while the Supreme Court has not definitely passed upon the matter, it has in other cases adopted the principle that a loan is usurious when there is any contingency which may arise under the contract, whereby the lender may obtain more than the lawful rate of interest. They cite to this point *Kammer v. Glenz,* 118 Ill. App. 570; *Union Nat. Bank v. Louisville, N. A. & C. Ry. Co.,* 145 Ill. 208. In the *Kammer* case the lender, in addition to the notes and mortgage, as part of the same transaction took an additional contract, which provided that the lender should have the dividends on certificates of

stock in a corporation then being organized, which were deposited with the lender as additional security. In the *Union National Bank* case the borrower agreed to obtain a certain depositor for the bank and in case of failure so to do agreed he would pay extra interest to the amount of $2\frac{1}{2}$ per cent on the loan. In the *Kammer* case the lender did not in fact draw any dividends, nor in the *Bank* case did the bank collect the extra $2\frac{1}{2}$ per cent as agreed, yet both loans were held to be tainted with usury notwithstanding the usurious contract had not been in fact carried out. In both cases the agreement was clearly usurious. It is not claimed that the cases are controlling here.

Defendants rely very much upon *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S. W. (2d) 282, certiorari denied in 284 U. S. 625, and urge that careful attention be given to it. We have given consideration to it as well as to the annotation thereto which appears in 84 A. L. R. 1283. The annotator summarizes the law as being contrary to the decision there made, saying:

"By the great weight of authority it is held that the inclusion, in a contract to repay money, of a provision that, on default in the payment of the interest, or an installment of the principal, the entire indebtedness, including interest for the whole term or interest to the date of default, shall become due, does not constitute usury though the amount of such interest will exceed the legal rate. The excess interest, however, is penal, and can be neither collected nor retained."

In Williston on Contracts, vol. 3, sec. 1696, the author states:

"The provision in a pecuniary obligation that on default of the debtor in payment of either principal or interest the entire indebtedness including interest for the full term, or a greater sum than legal interest to the time of default, shall thereupon become imme-

diately payable, is not usurious, though recovery of any excess over legal interest is generally disallowed as penal. Similarly, a provision that on default by the maker an obligation shall thereafter bear a rate of interest higher than the legal rate, though it may be objectionable as penal if the rate is excessive, is not usurious. The principle applicable to these cases has been thus stated: 'Wherever the debtor by the terms of the contract can avoid the payment of the larger by the payment of the smaller sum at an earlier date, the contract is not usurious but additional, and the larger sum becomes a mere penalty.' The same principle should render valid a stipulation in the original contract of the borrower for compounding interest if not paid when due though the rate reserved was the full legal rate, and such is the more general rule; but in many States the provision is held, if not usurious, at least penal and unenforceable. After lawful interest has once become due, there seems no doubt of the validity of a contract express or implied from custom to pay interest thereafter upon the interest already matured.''

The *Shropshire* case is, as it seems to us, distinguishable from the instant case in two respects. In the first place, there the acceleration clause provided that on default the debtor should be liable for the principal indebtedness and also for the interest which would accrue for the entire term. In this case, the acceleration clause does not require the payment of interest which is unearned at the time of the exercise of the option by the holder of the indebtedness. The distinction seems to us vital. The possible contingency out of which usury might arise is in the *Shropshire* case proximate and probable; in this case it is remote and improbable. The distinction is important because of its bearing upon the intention of the parties, in particular the intention of the lender. In the second

place, the usury statute of Texas (applicable in the *Shropshire* case) is distinguishable from that of Illinois, in that it includes among the items for which a charge may be regarded as usury the "detention" of money, thus seeming to preclude the application of the principle that an excess charge arising upon a contingency may be considered as in the nature of a penalty, for which a charge is not prohibited by the usury statute. However, if it had been made to appear in this case that the provision for acceleration was intended to be used as a device to collect an unlawful rate of interest contrary to the statute, we would not hesitate to hold it to be usurious. The evidence precludes the idea that it was used by the parties for any such purpose, or that such design was within their contemplation.

The courts of this State have held that in the last analysis the question of whether a contract is tainted with usury is determined not by the form of the contract employed but by the intention of the parties. *Curtis v. LeMoyne,* 248 Ill. App. 99; *Clemens v. Crane,* 234 Ill. 215; *Cooper v. Nock,* 27 Ill. 301. Moreover, there are well considered cases which seem to sustain complainants' contention, namely, that where a commission is paid to the mortgagee for the negotiation of a loan, the transaction is not usurious where the interest for the period of the note, plus the commission when prorated over the length of time the note is to run, does not amount to more than the legal rate per annum. In *McGovern v. Union Mut. Life Ins. Co.,* 109 Ill. 151, our Supreme Court said:

"When this loan was made the legal rate of interest was 10 per cent per annum when the contract provided for this amount. The loan in this case was for three years, at nine per cent interest. Now, the three per cent commissions only amounted to one per cent per annum, so that if the commissions are regarded

as interest, and added to the interest at nine per cent, provided for in the note, the rate would still be only ten per cent, and not usurious.''

In *National Life Ins. Co. v. Donovan,* 238 Ill. 283, where the same contention was made, the court said:

''Deducting interest in advance is not usury, nor is the withholding of a commission for the loan, provided the total amount of interest charged, together with the commission, does not exceed 7 per cent for the length of time for which the loan was made.''

In the more recent case of *Council v. Bernard,* 319 Ill. 392, where a loan of $50,000 at six per cent for a term of five years had been made, with an agreed commission of $2,000 and the defense of usury was interposed, the court said:

''If Bernard made the loan for himself as mortgagee, using his own money, still the transaction would not be usurious, as the interest at six per cent for the entire five-year term, together with the charged commission of $2,000 spread over the same term, only amounts to a rate of interest of 6 8/10 per cent, while the legal interest rate that may be charged is seven per cent. It is not usury to withhold a commission for a loan, provided the total amount of interest charged, together with the commission, does not exceed seven per cent for the length of time for which the loan was made. Hence, it makes no difference whether the loan was made by Bernard for himself, or as a broker.''

Under these authorities, we think it must be held that neither this loan, nor the extension of it, may be said to be tainted with usury, in the absence of some evidence tending to show that the provisions of the contract were planned with the intent to evade the statute. There is no such evidence.

IV. Defendants contend that the decree should be reversed for the reason, as it is said, that the guardian *ad litem* appointed to defend the interest of one of the

defendants, who was a minor, failed to give the necessary attention to the defense of the minor's rights. It is pointed out that the guardian *ad litem* appeared only once before the master, at which time he proved up his fees (which amounted to $50). It is also pointed out that he was absent when the exceptions to the report were argued before the court. The interest of the minor in this litigation was that of one who held a beneficial interest in one-third of the premises, the title to which, however, was held in the name of the trustees, who are defendants and who have most vigorously defended this suit. His interest was identical with theirs. The attorneys for the trustees were solicitors of large experience and known ability. Cases are cited where the decree has been reversed because no guardian *ad litem* was appointed for a minor, or where the conduct of the guardian *ad litem* was such as to amount to a fraud upon the court. There is nothing in the facts appearing in this record to bring the case within these rules. The guardian *ad litem* seems to have carefully examined the record, and if he performed this service intelligently he must have discovered that every possible defense had been presented in an able and competent manner. He is to be commended for refraining from performing a large number of useless services which would have resulted in an exorbitant and needless bill against the estate. The solicitor owes a duty to his client not to incur unreasonable and unnecessary expenses for legal services.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*

McSurely, P. J., and O'Connor, J., concur.