(No. 18861.—

JONAS BEECHLEY *vs.* HARM H. HARMS, Appellant.—(SARAH BARNES *et al.* Appellees.)

*Opinion filed October 25, 1928.*

John G. Friedmeyer, and A. M. Fitzgerald, for appellant.

Edward Pree, Harlington Wood, and Russell F. Meyer, for appellees.

Mr. Justice Stone delivered the opinion of the court:

Two bills were filed in the circuit court of Sangamon county against appellant, each seeking a mandatory injunction to compel him to remove a certain dam constructed by him between his property and that of the complainants in the bills. The causes were consolidated in the circuit court and come here on one appeal. Appellee Jonas Beechley was complainant in one of the bills and appellees Sarah Barnes and others were complainants in the other bill.

Appellant is the owner of a forty-acre tract of land in Sangamon county on which the dam in question is located. Beechley owns the forty-acre tract adjoining appellant's land on the west. Sarah Barnes and others, widow and children of Charles Barnes, deceased, own eighty acres lying south and west of appellant's tract. The east forty of the Barnes eighty adjoins appellant's land on the south. The dam complained of is at the southwest corner of appellant's forty. Its length is variously estimated between 200 feet and 300 feet, extending east from the southwest corner of appellant's tract of land at the boundary line between it and the Barnes land. It also extends north from the southwest corner of appellant's land approximately the same distance along the boundary line between appellant's land and the Beechley land.

The bills allege that appellant's land is the servient tenement and the lands of appellees in each case are alleged

to be the dominant tenements. In both bills complainants' lands are referred to as tracts "A" and appellant's land is described as tract "B." The bills charge that the natural drainage is from each of the tracts "A" to the east and north upon tract "B," owned by appellant; that the surface water drains east and north over appellant's land; that in the year 1920, and subsequent thereto, appellant deposited dirt, debris and other obstructions and caused to be built an embankment along the lines herein described, thereby obstructing the natural flow of water and causing the same to back up and overflow fifteen acres of the Barnes land and ten acres of the Beechley land. The bills also allege that appellant is threatening to place additional obstructions in the water-course. The prayer of the bill in each case is that appellant be required to re-open the natural water-course and remove the obstructions and that he and those claiming under him be perpetually enjoined from further interference with the drainage of tracts "A." Appellant answered each bill, denying that the natural drainage of tracts "A" is east and north to and upon tract "B." The answer also denies that appellant in 1920, or since, built or caused to be built an embankment or levee across the water-course so as to stop the free drainage; alleges that tract "B" is higher than the Barnes or Beechley land and that there is no natural water-course across tract "B;" avers that appellant has been in possession of tract "B" for more than twenty years, and that the embankment in question was constructed many years before he purchased the land and a hedge fence had been set on this embankment by the former owner; that the embankment was constructed for the purpose of keeping water from flowing from tracts "A" onto tract "B," and to prevent backwater in times of heavy floods from flowing upon tract "B" from the west and south and flooding the same, and not to prevent the natural flow of a water-course.

Two questions of fact were presented on the hearing. The first was whether there was a natural course of drainage passing north and east from the Barnes and Beechley lands over appellant's land; and second, whether the embankment complained of had been in existence continuously, uninterruptedly and adversely for a period of more than twenty years, with the knowledge and acquiescence of the owners of tracts "A."

In the bills as originally filed a claim for damages was made. This claim was later dismissed.

On hearing before the chancellor the issues were found in favor of complainants and a decree for injunction was granted finding that the Barnes and Beechley lands were the dominant tenements; that appellant's land is the servient tenement, and that the natural drainage is in an easterly and northerly direction over and upon appellant's land. The court further found that in the year 1920, and subsequent thereto, appellant had placed poles, planks, dirt and other obstructions and caused to be built a dam or embankment at the points hereinbefore described, and that the same was constructed without the consent of the owners of the Barnes and Beechley tracts, and that by reason of this dam surface waters naturally coming onto the Barnes and Beechley lands have been caused to back up and remain on those lands and overflow the same. The court further found there was not sufficient proof tending to establish a prescriptive right in appellant to maintain the embankment there placed by him, and decreed that he remove the dam or embankment constructed in 1920 or subsequent thereto so as not to interfere with the natural drainage of the surface waters from the Barnes and Beechley lands, and enjoined appellant, and those claiming under him, from further interrupting the natural drainage of the waters.

The issues involved are questions of fact. There is no dispute as to the law. While the answer alleged that appellant's land is the dominant tenement, it is so clearly es-

tablished, even by his witnesses, that appellees' lands are the dominant tenements and appellant's tract the servient tenement, that it is not seriously argued here by counsel for appellant that this is not true. In fact, the answer of appellant, by which he claims a prescriptive right to the embankment on which the hedge was planted, shows that it was built for the purpose of keeping flood waters from flowing onto his land from the lands of appellees. While there is evidence tending to show that the water falling on these tracts has no natural outlet from appellant's land, this does not, even if it were shown, relieve the servient tenement from receiving the water falling on the dominant tenements. *Mauvaisterre Drainage District* v. *Wabash Railway Co.* 299 Ill. 299.

Appellant does not deny that in 1920, and subsequent thereto, he placed poles, planks and dirt on his side of the hedge fence, but contends that it was for the purpose only of re-building the embankment constructed by his predecessor in title more than thirty-five years before, and that he did not raise the height thereof. The testimony of nineteen witnesses for appellees is to the effect that prior to 1920 the water at the time of heavy rains flowed from the Barnes and Beechley lands through the hedge and onto the land of appellant but that subsequent to that time it backed up to a depth of from two to two and a half feet onto the lands of appellees before overflowing the embankment. If this testimony is true it is evident that the original embankment has been raised. A. B. Gibble testified for appellant that his father, who previously owned the land and sold the same to appellant, constructed an embankment in the year 1879 or 1880; that in his judgment it was built to its present height, and when completed a hedge row was planted along the top of it. It is abundantly proven by the evidence that the ridge on which the hedge now stands was built at about that time. It is not seriously contended that there is no ridge there. The hedge proves its own exist-

ence. Some of appellees' witnesses testified that prior to 1920 they did not notice a ridge under the hedge row, while others stated there was a slight ridge there but that the water flowed through the hedge and did not accumulate on the Barnes or Beechley property. The contested question of fact is whether that ridge has been increased in height by the acts of appellant. The chancellor found that the obstructions put in by appellant in 1920, and since, did increase the height of the ridge on which the hedge was planted. As we have said, nineteen witnesses testified for appellees. The testimony of all of them is to the effect that prior to 1920 flood waters on the Barnes and Beechley lands flowed through the hedge onto the land of appellant but that after that time they were obstructed by an embankment made of poles, planks and dirt and backed up on the Barnes and Beechley lands so as to render unfit for cultivation about fifteen acres of the Barnes land and ten acres of the Beechley land.

The testimony of four engineers was introduced, two on behalf of appellees and two on behalf of appellant, to show the topography of these tracts. While these engineers differed somewhat in their judgment as to the direction of the flow of water from and over the lands in question, a study of their testimony shows that they agree that appellant's land is the servient tenement.

Seven witnesses testified for appellant. The gist of the testimony of some is that the ridge on which the hedge is now growing has been in existence from the year 1879. Most of these witnesses testified that the height of the ridge had not been increased. Some of appellant's witnesses testified that at the time the levee was constructed a system of artificial drainage was devised and agreed to by the then owners of the lands for the purpose of caring for the surface waters that came upon these lands; that appellant's predecessor constructed certain ditches and tile drains for the purpose of taking care of the water on the Barnes and

Beechley lands. Most of appellant's witnesses testified that the embankment filled in by appellant on his side of the hedge fence is no higher than the ridge on which the hedge stands but is merely a widening and strengthening of that ridge or embankment. On this issue it seems clear that the preponderance of the evidence is with appellees. It can not be doubted that appellant has a right to maintain at its original height the embankment which was constructed in 1879 and on which the hedge is growing, (*Zerban* v. *Eidmann,* 258 Ill. 486; *Wills* v. *Babb,* 222 id. 95;) and to return that embankment to its original height when it has been washed out by overflow. (*Sell* v. *Finke,* 295 Ill. 470; *Ballard* v. *Struckman,* 123 id. 636.) He does not have, however, and does not claim to have, the right to increase the height of this embankment. This he and his witnesses testify he has not done, while the witnesses for appellees testify that the height of the embankment has been raised. The chancellor heard the testimony of the witnesses and was in a better position to judge as to their truthfulness and the accuracy of their judgment than this court, and as we interpret the decree appellant is directed to remove such obstructions placed on his land along the embankment as increased the height thereof. The decree is sustained by the evidence. Appellant not having the consent of appellees to increase the height of the original embankment must be held to have done so wrongfully, and the chancellor was right in decreeing that he remove such obstructions and return the ridge on which the hedge stands to the height at which it existed in 1920.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*