Gerald Dobie, Plaintiff-Appellee, v. M. Luther Liven-
good et al., Defendants, M. Luther Livengood et al.,
Defendants-Appellants.

Gen. No. 10,089.

Third District.

January 17, 1957.

Released for publication February 4, 1957.

Harvey Gross, of Paris, for defendant-appellant.

Massey, Anderson and Gibson, of Paris, for plaintiff; Earl R. Anderson, of Paris, of counsel.

PRESIDING JUSTICE REYNOLDS delivered the opinion of the court.

The plaintiff in this cause loaned the defendant, M. Luther Livengood, $10,000 on or about March 18th, 1952. The defendant and his wife, Blanche S. Livengood, met the plaintiff in the office of Harry C. Kinne, Sr., an attorney at law, who was then and there acting for the plaintiff, Gerald Dobie, and at that time the plaintiff delivered to the defendants a draft for $10,000 and at the same time, the defendants executed a note for the $10,000 secured by a trust deed on certain oil properties owned by the defendant M. Luther Livengood. The interest rate agreed upon at that time was 6%. Nothing was paid on the note, and the plaintiff brought suit to foreclose said trust deed. The defendants filed their answer admitting the debt, but at the same time the defendant M. Luther Livengood filed his counterclaim for services allegedly rendered the plaintiff by the defendant Livengood. Later, defendants amended their answer and set up the affirmative defense of usury alleging that in addition to 6% interest required by the note, that the defendant M.

344

Luther Livengood had orally agreed to assign to the plaintiff an undivided one-sixteenth interest in a wildcat oil lease. To this affirmative defense the plaintiff filed his answer. The counterclaim of the defendant as originally filed alleged the purchase of certain leases for the plaintiff for which a commission was claimed. The plaintiff in answering the claim of a commission due, set up as a defense that the defendant M. Luther Livengood had no broker's license and was therefore not entitled to any commission. Afterwards, the defendant M. Luther Livengood amended his counterclaim to show that he had purchased interests in oil and gas leases and at the instance of the plaintiff had surrendered his interest to the plaintiff and thereafter performed certain duties in connection with the completion of the sale and claimed $1,000 as a reasonable value for his services.

Trial was had before the court without a jury, and the trial court found the defendants were indebted to the plaintiff in the sum of $10,000 together with interest of 6 per cent, making a total due the plaintiff from the defendants of $13,575.80 as of the date of the decree. From that decree the defendants have appealed to this court.

■ Since the one ground raised on appeal by the defendants is that the decree of the trial court is against the greater weight and preponderance of the evidence, it will be necessary to examine all the evidence in the case, both as to the claim of usury and as to the compensation claimed as a set off by the defendant, M. Luther Livengood. In considering these two disputed matters it must be kept in mind that both are affirmative defenses and the burden is on the defendants to prove them or either of them by the greater weight of the evidence. It is not disputed that the defendants had borrowed from the plaintiff the sum of $10,000. It is equally undisputed that the note carried interest at the rate of 6 per cent per annum. The sum

345

of $1,000 was stipulated to be a reasonable attorney's fee. It is further undisputed that the defendant Livengood executed and delivered to the plaintiff an assignment of a one-sixteenth interest in a certain oil and gas lease known as the Englum lease. The testimony as to the time that this assignment was made is in sharp conflict. The plaintiff and the defendant agree that the assignment was discussed on the same day that the money was loaned and the trust deed was executed in the office of Harry C. Kinne. At that time, there seems to have been present Mr. Kinne, the attorney for the plaintiff, the plaintiff, the defendant M. Luther Livengood, and his wife, Blanche S. Livengood. The plaintiff testified that the assignment of the one-sixteenth interest in and to the oil and gas lease known as the Englum lease was made after the note and trust deed had been executed and the money delivered, and that the assignment had no connection in any way with the loaning of the money and was an aftermath of the agreement pertaining to the $10,000. Mr. Livengood, the defendant, testified that the assignment was talked over by the parties before the money was loaned and before the execution and delivery of the note and trust deed, and that it was part of the whole transaction. Although Mr. Kinne was present and was active in the drawing up of the necessary papers, he did not testify as to whether the agreement for the assignment of the one-sixteenth interest was before or after the loaning of the money, and the testimony of the wife of the defendant does not touch on this question. The trial court in his memoranda of opinion held that it was the trial court's opinion that the burden was upon the defendant to explain why these two witnesses did not testify so as to throw light on this particular transaction.

The defendant placed in testimony a note written by the plaintiff to the defendant in August, 1953. In that note or letter the plaintiff, after demanding payment of the $10,000 loaned or part of it, made this statement

in the following language: "Something else annoys me is that you gave me a $\frac{1}{16}$ interest in a lease on which you agreed to drill an exploratory well—this being part of the loan deal—and you let the lease lapse, so that in effect all I got was a piece of paper. I think you have an obligation here to substitute an interest in one of these two leases you have acquired."

The defendant claims that this language shows that the assignment of the one-sixteenth interest in the Englum lease was in addition to the 6 per cent interest and was part of the loan of $10,000 and the execution of the note and mortgage.

In the trial court's memorandum of opinion, the trial court says that counsel for plaintiff conceded that the language used in this letter was "an ill-used phrase," but the trial court goes on to say that the language used in the letter may be reconciled with plaintiff's theory of the case when all the surrounding circumstances and evidence are taken into consideration and most particularly the time and under the conditions that the letter was written, insisting, in the main, upon Livengood making payment of the principal loan of ten thousand dollars. And the trial court further commenting in the memorandum of opinion says that it does not seem logical that a man would appear at his attorney's office with a draft in the amount of ten thousand dollars for the purpose of having the necessary legal documents prepared to safeguard him in his loan, would have completed the transaction and paid over the money, if a part of the consideration was the execution of an interest in an oil and gas lease. That the agreement to execute an oil and gas lease, being a freehold interest, would be void under the Statute of Frauds, and unenforceable unless some memorandum had been made, and that surely Mr. Kinne would have so advised the plaintiff.

Two other questions arise. One is the question of the value of the assignment of the one-sixteenth interest in

the oil and gas lease, and the other is what services were rendered by the defendant for the plaintiff in the securing of other interests in oil and gas leases and the value of those services.

Mr. Dobie testified that he paid nothing for the assignment and that there was no consideration for it; that Mr. Livengood gave it to him and that it had nothing at all to do with the loan. In his testimony about the paragraph of the letter from the plaintiff to the defendant, relied upon by the defendant to show that the assignment was part of the transaction, the plaintiff testified that the assignment was not conditional to making the loan. As to the value of the assignment of the one-sixteenth interest in the Englum lease, the plaintiff testified that the finding of oil on this particular lease was highly problematical and that it had no definite value.

Walter W. Henigman, a witness with considerable experience in oil well drilling, testified that the value of an oil lease or interest in an oil lease, would be dependent upon the operator who tried to raise money and the more able the operator is to raise money, the more valuable the lease. Mr. Henigman valued the one-sixteenth interest at $750.

Mr. Kinne value the one-sixteenth interest in the lease at $1,000. C. M. Faulkner, a veterinarian, and oil well driller, testified that in his opinion the Englum lease was worthless. Robert P. Hennig, an oil producer and driller with considerable experience in oil well drilling testified that in his opinion the fair, reasonable market value of the one-sixteenth interest in the Englum lease at the time it was assigned to Mr. Dobie was $79 or $80. Mr. Livengood, the defendant valued the one-sixteenth interest at $1,000, and testified that in discussing the matter of the loan the day before they agreed upon the loan, in a conversation between himself and the plaintiff, that the plaintiff at that time

told him that he could make more than six per cent on his money and that his only objection was to loaning the money out at six per cent; that at that time he, the defendant told the plaintiff about the one-sixteenth interest in the Englum lease and that they agreed then for the assignment of the one-sixteenth interest as further consideration for the loan.

The compensation claimed in the amended counterclaim is for services claimed to have been rendered by the defendant Livengood for the plaintiff in the purchase of other interests in what was known as the Dudley Field or Dudley Pool. Mr. Dobie testified that he was the owner of a one-sixteenth interest in the Brinkerhoff "B" lease in the Dudley pool; that in December 1951 he purchased an interest from Forrest S. Blunk and Leslie Vogel; that in purchasing their interest Livengood had nothing whatever to do with the purchase; that in April 1952, he purchased the interest of Barkley, Whitaker and others; that Livengood had told him about the Barkley interest and recommended buying at $2,000 per barrel; that he examined the Dudley field and did not buy at that time; that later, the defendant Livengood again contacted him and told him that Barkley still wanted to sell; that he later learned he could purchase the Barkley interest at $1,750 per barrel; that he contacted Mr. Kinne and instructed him to go ahead and close the deal with Barkley on the basis of $1,750 per barrel. Mr. Barkley testified that he had talked with Livengood as well as others about selling his interest and the interests of others in the Dudley field, but that he did not deal with Mr. Livengood and that the transaction was handled by K. Parker Vosloh, his attorney. Mr. Kinne testified that he had considerable dealings with Livengood in connection with the purchase of the Barkley and other interests, and the assignment of their interests, but that he didn't hire Livengood to do

349

anything in connection with the matter. At that time, Mr. Kinne was acting for the plaintiff in the purchase of the Barkley and other interests. Vosloh, attorney for Barkley testified that Livengood was contacted several times in connection with the sale, but that he did not know in what capacity Livengood was acting and that he could have been a volunteer; that to his knowledge Livengood did not have any authority from Dobie to represent him.

The evidence is in conflict as to a number of questions of fact. The time of agreement for the assignment of the one-sixteenth interest in the Englum lease is in dispute, the plaintiff claiming it was after the loan was made, and the defendant claiming it was before, with two other witnesses who might have thrown some light on the matter not testifying on that question. The value of the one-sixteenth interest assigned to the plaintiff is disputed, some witnesses testifying it was worthless or of nominal value only and others valuing it up to $1,000. The value of the services, if any, rendered by the defendant for the plaintiff in the purchase of the Barkley and other interests in the Dudley field is disputed. The authority to render services is disputed. The services claimed rendered are in dispute.

As previously stated in this opinion, the defense of usury, and the counterclaim set out are affirmative defenses and must be proven by the defendant by the greater weight of the evidence. The defendant must not only prove that the assignment of the one-sixteenth interest in the Englum lease was part of the loan transaction, but must also prove that it had a value of sufficient amount to render the interest charged usurious. The note and the interest set forth do not show usury, on their face. And even if the note and interest charged, together with the assignment interest constituted usury, there must have been an intention on the part of both the borrower and the lender to contract

for or make usurious interest. Because the defense of usurious interest is in the nature of a penal action, the usury must be proved by a clear preponderance of the evidence.

In the case of Replogle v. Scott, 299 Ill. App. 270, at page 274 the question of intention is discussed where the court said: "The transaction was conducted in good faith by all parties, and there was no intention to circumvent the statute against usury." And in the case of Chicago Title & Trust Co. v. Kearney, 282 Ill. App. 279, on page 286, that court said: "The courts of this State have held that in the last analysis the question of whether a contract is tainted with usury is determined not by the form of the contract employed but by the intention of the parties." Citing Curtis v. LeMoyne, 248 Ill. App. 99; Clemens v. Crane, 234 Ill. 215; Cooper v. Nock, 27 Ill. 301.

█ Therefore in addition to the requirement of proof by the greater weight of the evidence, on the part of the defendant, as to the other disputed facts, there is an additional burden placed upon him of proving that the parties themselves so understood and intended to enter into a usurious contract.

█ It is true that where a judgment is clearly and palpably against the weight of the evidence it is the duty of a reviewing court to interpose its judgment and reverse the judgment of the lower court. Ward v. Illiopolis Food Lockers, Inc., 9 Ill.App.2d 129; Bowman v. Illinois Central Railroad Co., 9 Ill.App.2d 182. But as said in the Ward v. Illiopolis Food Lockers case, "It is the law in Illinois that the reviewing court will not undertake to substitute its judgment for that of the trial court, unless the verdict or judgment is clearly and palpably against the weight of the evidence." And a reviewing court has no right to substitute its judgment for that of the trial court unless the verdict or judgment is clearly and palpably against the weight of

351

the evidence. This doctrine of law has been laid down by a long line of cases in Illinois, and applies not only to verdicts of juries, but equally to judgments and decrees of the court trying cases without a jury. Arliskas v. Arliskas, 343 Ill. 112; Olson v. Eulette, 332 Ill. App. 178; Beechley v. Harms, 332 Ill. 185; Horn v. Horn, 5 Ill.App.2d 346. In the Horn case, the court said, at page 355: "Where the evidence is conflicting the conclusions of the trial judge who saw and heard the witnesses and had advantages not possessed by the reviewing court in judging the weight of their testimony should not be disturbed unless clearly wrong." Citing City of Quincy v. Kemper, 304 Ill. 303; Bellm v. Henry, 336 Ill. App. 525.

There is one matter that undoubtedly the trial court in considering this matter took into consideration. In the original answer and counterclaim, the defendants did not interpose the defense of usury. This came later and appears to have been an afterthought on the part of the defendant M. Luther Livengood. If there had been a definite understanding between the plaintiff Dobie and the defendant Livengood that this extra compensation or transaction with a claimed value of $1,000 was part of the loan transaction, the defendant was well aware of it and he would have pleaded it in the first instance.

█ Further there is the uncontradicted testimony by the plaintiff that Livengood had tried to interest him in the purchase of the interest in the Englum lease at a date prior to the loan date, and that he had refused to purchase the interest at any price. The trial court in his memorandum of opinion further relied upon the law as laid down in the case of Wilson v. Reed, 262 Ill. App. 230, where the court said: "The law seems to be that if an agreement can reasonably be construed as non-usurious, it should be so construed." Citing Mosier v. Norton, 83 Ill. 519; Mumford v. Tolman, 157 Ill. 258.

After carefully examining the evidence and in view of the many questions of fact that are in dispute, this court is not inclined to substitute its judgment on those questions of fact for those of the trial judge, and is not convinced that the judgment of the trial court is so clearly and palpably against the weight of the evidence, as to warrant this court in reversing the judgment. The judgment will be affirmed.

Affirmed.